

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-10-2007

# USA v. Ausburn

Precedential or Non-Precedential: Precedential

Docket No. 06-2250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ausburn" (2007). *2007 Decisions.* Paper 345.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/345

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2250
_____

UNITED STATES OF AMERICA

v.

DAVID AUSBURN,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 05-cr-224)
District Judge: Honorable Arthur J. Schwab

Argued June 8, 2007
_____

Before: SMITH and GREENBERG, *Circuit Judges*,
and POLLAK,[*] *District Judge*.

_____

[*]Honorable Louis H. Pollak, District Judge for the United
States District Court of the Eastern District of Pennsylvania,
sitting by designation.

———

(Filed September 10, 2007)

———

Lisa B. Freeland, Esquire
Federal Public Defender
Karen Sirianni Gerlach, Esquire (argued)
Assistant Federal Public Defender
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, Pennsylvania 15222
*Counsel for Appellant*

Mary Beth Buchanan, Esquire
United States Attorney
Laura Schleich Irwin, Esquire (argued)
Assistant United States Attorney
Robert L. Eberhardt, Esquire
Office of United States Attorney
700 Grant Street
Suite 400
Pittsburgh, Pennsylvania 15219
*Counsel for Appellee*

———

OPINION OF THE COURT

———

POLLAK, *District Judge*:

David Ausburn appeals from the sentence imposed after he pled guilty to using a telephone and a computer to persuade a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). The most salient feature of that sentence is a

-2-

144-month term of imprisonment—more than double the top end of the advisory range under the Sentencing Guidelines ("guidelines" or "U.S.S.G."). Ausburn argues that: (1) the District Court's failure to provide advance notice of its intent to sentence him above the advisory guidelines range violated the Due Process Clause; and (2) the District Court's sentence was unreasonable.[1]

The District Court did not provide a statement of reasons sufficient to allow us to review whether Ausburn's sentence was reasonable under the circumstances; therefore, we must vacate the sentence and remand for a new sentencing proceeding. This result is plainly required by our previous decisions, *see, e.g.*, *United States v. Kononchuk*, 485 F.3d 199, 204–205 (3d Cir. 2007); *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006); *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), and hence does not itself call for treatment in a precedential opinion. However, we have chosen to write precedentially in order to address Ausburn's due process argument. As discussed

_____

[1] Ausburn also contends that a condition of his supervised release requiring him to submit DNA samples at the direction of his probation officer violates his Fourth Amendment right to be free of unreasonable searches. This contention was not advanced in the District Court. Ordinarily we would review such an unpreserved contention for plain error. *See United States v. Loy*, 191 F.3d 360, 369 n.6 (3d Cir. 1999). However, as Ausburn acknowledges, his Fourth Amendment argument is squarely foreclosed by our decision in *United States v. Sczubelek*, 402 F.3d 175, 177 (3d Cir. 2005). Therefore, because we lack authority to grant relief on this issue, we will not address it. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704–705 (3d Cir. 2005) ("[A] three-judge panel may not overrule a decision by an earlier panel.") (citing Third Circuit Internal Operating Procedure 9.1).

below, we find this argument unavailing for substantially the reasons stated in *United States v. Vampire Nation*, 451 F.3d 189, 195–98 (3d Cir. 2006) (holding that advance notice of potential sentencing variances is not required under Federal Rule of Criminal Procedure 32(h)), *cert. denied*, 127 S. Ct. 424 (2006).

## I.

## A.

Ausburn met the minor victim in this case sometime prior to January 2003, when he responded to a call at her home while on the job as a police detective with the West Homestead Police Department ("WHPD") in Allegheny County, Pennsylvania.[2] Ausburn contends that he began his relationship with the girl and her family for the purpose of acting as a role model and positive influence in the girl's life. However, in or around January 2003, Ausburn began a sexual relationship with the girl, who was then fourteen years old. The relationship lasted from January 2003 until early 2005 (although Ausburn was ultimately charged based only on his conduct from January to February of 2003).

In January 2005, a confidential source provided United States postal inspectors with printed copies of several e-mails exchanged between Ausburn and the minor victim in January

---

[2] The record shows that the minor victim in this case has already been affected adversely by public scrutiny surrounding the proceedings. We therefore limit our discussion of the facts underlying Ausburn's offense to the minimum necessary to explain our decision.

and February of 2003.[3]  The e-mails referred obliquely to the sexual nature of their relationship.  After a preliminary investigation, including an interview with the minor victim, the inspectors confronted Ausburn with the e-mails on February 3, 2005.  On February 4, 2005, Ausburn confessed to a sexual relationship with the minor victim and to the use of e-mail and the telephone in furtherance of that relationship.

**B.**

On August 3, 2005, the government filed a criminal information in the United States District Court for the Western District of Pennsylvania charging that "[f]rom in and around January, 2003, until in and around February, 2003," Ausburn, "using a facility and means of interstate and foreign commerce, specifically a telephone and a computer, did knowingly persuade, induce, entice and coerce an individual [under eighteen] to engage in [illegal] sexual activity," in violation of 18 U.S.C. § 2422(b).  After agreeing to plead guilty to this charge, Ausburn moved in the District Court for the production of a Presentence Investigation Report ("PSR") prior to his change-of-plea hearing, "in contemplation of scheduling a change of plea and sentence together in one proceeding."  The court agreed and ordered the Probation Office to prepare a PSR.

The PSR: (1) made factual findings as to, *inter alia*, "offense conduct," "offender characteristics," and "victim impact"; and (2) calculated a total offense level of twenty-five and an advisory sentencing range of fifty-seven to seventy-one months under the 2002 guidelines.  Although there is a

---

[3] Ausburn had apparently left the e-mails behind in the drawer of an old workstation after he was promoted to chief of police of the WHPD in January 2004.

presumption that the guidelines in effect at the time of sentencing will be applied, *see* U.S.S.G. § 1B1.11(a) (2004), the PSR found that application of the 2004 guidelines—which were in effect when the PSR was prepared in October 2005—would have resulted in a harsher sentencing range (seventy to eighty-seven months) than that called for under the 2002 guidelines. Therefore, pursuant to U.S.S.G. § 1B1.11(b)(1) (2004), the less punitive provisions found in the 2002 guidelines manual were applied to avoid an *ex post facto* violation.

Ausburn filed written objections to the PSR's application of the 2002 guidelines, arguing instead that the District Court should apply what was essentially a hybrid of the 2002 and 2004 guidelines.[4]  In the alternative, Ausburn stated that "the next fairest approach" would be to follow "the view of both counsel during plea negotiations" and apply the 2002 guidelines, but without a two-offense-level enhancement recommended by the PSR for "the victim [being] in the custody, care, or supervisory control of the defendant."[5]  This would have resulted in a total

_____

[4] Ausburn argued that, in applying the 2004 guidelines, the court should continue to give effect to a cross-reference found in the 2002 guidelines.  He stated that the "current [2004] version of U.S.S.G. § 2A3.2 should be applied to him despite its current non-appearance *via* a cross-reference in § 2G1.3." Similarly, on appeal, Ausburn argues that "there was no good reason to deny Mr. Ausburn the benefit of the current [2004] version of § 2A3.2, despite the absence of the cross-reference, since the guideline was appropriate for the conduct."

[5]  The "custody, care, or supervisory control" enhancement "is to be applied whenever the victim is entrusted to the defendant, whether temporarily or permanently." U.S.S.G. § 2A3.2 cmt. n.2 (2002).  Ausburn did not object to the PSR's finding that the victim's parents had on several occasions

offense level of twenty-three and a sentencing range of forty-six to fifty-seven months.

Ausburn offered two additional arguments that seemed to relate to the court's sentencing discretion under 18 U.S.C. § 3553(a), rather than the guidelines calculation *per se*. First, he argued that under the post-*Booker*, advisory-guidelines scheme, "a sentence consistent with" his suggested guidelines analysis was "appropriate in the discretion of the Court." Second, he argued that "two recent cases in this district suggest an appropriate sentencing range for Mr. Ausburn." In the first case, *United States v. Bricker*, Crim. No. 04-326 (W.D. Pa., judgment entered Sept. 1, 2005), a defendant who used "motion-activated cameras" to record "child pornography" had been sentenced to thirty months' imprisonment. In the second case, *United States v. Kenrick*, Crim. No. 04-291 (W.D. Pa., judgment entered Nov. 10, 2005)—which had been decided by the district judge sitting in Ausburn's case—the defendant received a sentence of forty-six months imprisonment for a sexual offense involving a minor.[6] In light of these cases, Ausburn argued that the "appearance of fairness," the "goal of uniformity in sentencing," and the statutory need to avoid unwarranted sentencing disparities all "militate[d] in favor of applying one of the more lenient Guidelines analyses in this case."

Finally, Ausburn objected to two factual contentions in the PSR: (1) he sought inclusion of additional e-mails from the minor victim which he stated "serve[d] to encourage the

---

allowed Ausburn to drive the victim to church and school functions.

[6] *See also United States v. Kenrick*, No. 05-5077, 2007 WL 2384232, at *3 (3d Cir. Aug. 21, 2007).

relationship"; and (2) he objected to the PSR's finding as to the duration and extent of his sexual relationship with the minor victim.

The government filed a brief response in which it endorsed the PSR's guidelines calculation, stating that "[t]he government believes that a sentence within the Guideline range . . . is reasonable." The government "request[ed] that the Court sentence Defendant within the Guideline range."

The District Court entered "Tentative Findings and Rulings" on March 28, 2006, overruling Ausburn's objections and adopting the PSR's recommended advisory sentencing range of fifty-seven to seventy-one months. As to Ausburn's argument that a combination of 2002 and 2004 guidelines provisions should be applied,[7] the court noted that "[i]t is not our prerogative to override the decisions of the United States Sentencing Commission about which guidelines apply to certain statutory provisions."[8] As to Ausburn's second argument

---

[7] It would appear that, at the time the District Court made this ruling, in March 2006, the choice should have been between the 2005 guidelines and the 2002 guidelines, not the 2004 guidelines and the 2002 guidelines. *See* U.S.S.G. (2005) (incorporating guideline amendments effective November 1, 2005, and earlier). However, the parties and the District Court have proceeded under the assumption that "the 2004 manual was in effect on the date of Mr. Ausburn's sentencing," Appellant's Br. 31, and we see no reason to disturb this assumption, as our review shows that the 2005 guidelines and the 2004 guidelines applicable to Ausburn's offense are identical in all material respects.

[8] Ausburn raises this issue again on appeal. *See supra* note 4. Because we find no merit in Ausburn's complex guidelines argument, we decline to address the issue in detail. Rather, the following, brief discussion will, we think, suffice to explain our rejection of Ausburn's position.
    The choice before the District Court, in calculating Ausburn's guidelines sentencing range, was whether to apply

concerning his reliance on the range of forty-six to fifty-seven months contemplated during plea negotiations, the court stated that it was not obligated "to protect [the parties] from mistaken beliefs about which guidelines manuals either party believed would apply during preliminary plea discussions that were never consummated." As to the balance of Ausburn's legal objections, the court noted its awareness that "the Sentencing Guidelines are only advisory" and stated that "although this Court will use the guidelines calculations approach [from the PSR] in determining an advisory guideline range, this Court will also consider defendant's arguments in fashioning an appropriate sentence."

As to Ausburn's factual objections, the court first noted its responsibility under Federal Rule of Criminal Procedure 23(i)(3)(B) to resolve such objections unless "no such finding is necessary because the matter in controversy will not be taken into account in sentencing." The court then stated that "because [Ausburn's suggested] corrections [to the PSR] have no impact

the 2004 guidelines—in full—or the 2002 guidelines—in full. Ausburn's contention that the two sets of guidelines should be merged, in order to arrive at a proper calculation of his sentence, was not a viable option. *See* U.S.S.G. § 1B1.11(b)(2) (2004) ("The Guidelines manual in effect on a particular date shall be applied in its entirety. The court shall not apply . . . one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition . . . .").

Ausburn does not challenge the PSR's conclusion that application of the 2004 guidelines, as written, would have resulted in an offense level of twenty-seven and a sentencing range of seventy to eighty-seven months—a result harsher than the fifty-seven to seventy-one months called for under the 2002 guidelines. Accordingly, the District Court did not err in calculating Ausburn's guidelines sentencing range as fifty-seven to seventy-one months under the 2002 guidelines. *See* U.S.S.G. § 1B1.11(b)(1) (providing that court shall use guidelines in effect at time crime was committed, if using later version of guidelines would create *ex post facto* violation); *United States v. Wood*, 486 F.3d 781, 790 (3d Cir. 2007) (same), *petition for cert. filed*, No. 06-11641 (U.S. May 25, 2007).

upon the guidelines calculation, the court need not resolve any alleged conflicts." Further, the court also noted that it "accept[ed] the accuracy of the fact findings of the [PSR] which are not in dispute." Finally, the court stated that, in light of the tentative findings and rulings, "[s]hould defendant wish not to go forward with his open plea, it is certainly within his rights to do so at this time."

## C.

Ausburn's combined change-of-plea and sentencing hearing was held on March 31, 2006. In the first part of the proceeding, the court accepted Ausburn's waiver of indictment and plea of guilty to one count of violating 18 U.S.C. § 2422(b). In the course of determining that Ausburn's guilty plea was knowing and voluntary, *see* Fed. R. Crim. P. 11(b), the court, *inter alia*, confirmed Ausburn's understanding of the following facts: (1) the maximum term of imprisonment authorized by statute was fifteen years; (2) the guidelines range of fifty-seven to seventy-one months was advisory and was not binding on the court; and (3) the court had the "discretion to sentence . . . up to the maximum sentence permitted by the statute."[9]

## 1.

The combined hearing then segued directly into sentencing. The court first denied Ausburn's previously filed motion for production of victim-impact statements by the

---

[9] The colloquy on this particular point went as follows:
    THE COURT: Now, I would appreciate it if you would pay attention to the next question in particular.
    Do you understand that I'm not bound by any recommendation of sentence you and/or the government may have suggested to you, and the Court had discretion to sentence you up to the maximum sentence permitted by the statute?
    THE DEFENDANT: Yes, sir.

victim's guardian and her father and for a continuation of the hearing to review the statements. (This ruling is not appealed.) The victim statements were then presented, orally, to the court. The victim's father's statement emphasized the sense of betrayal on the part of the family, noting that the victim and her family had trusted that Ausburn, as a public safety officer, had only proper motives for his interest in the victim. The victim's father also addressed the seriousness of Ausburn's crime, described the emotional problems left in the wake of Ausburn's conduct, and expressed a hope that Ausburn would not be allowed to victimize "another unsuspecting family." The minor victim's guardian followed, emphasizing similar themes—i.e., the negative effect of Ausburn's actions on the minor victim and her family, and the likelihood of future emotional difficulties for the victim.

Immediately after this statement, the defendant and defense counsel were offered the chance to speak. Defense counsel began by stating: "Your Honor, that shows the reason I made my motion [for prior production of the victim-impact statements]. It's just I'm unable to respond to any of that." Counsel then asked the judge not to allow the victim-impact statements to determine the sentence, but to consider all of the section 3553(a) factors "and give Mr. Ausburn a chance to make something constructive of his life . . . when he does get out of prison." Counsel repeated his argument that Ausburn's case was "very much like" the *Kenrick* case decided by the same judge, in that it was "situational" and not driven by predatory or pedophilic behavior. He also pointed to Ausburn's "exemplary life and work prior to January of 2003 [as] a powerful factor that the Court should consider in determining what the sentence should be."

Noting also that this was Ausburn's first offense and that Ausburn promptly (upon being caught) accepted responsibility, defense counsel asked for a sentence of forty-eight months' imprisonment, arguing that this would serve "the need . . . to reflect the seriousness of the offense, . . . [to] provide for just

-11-

punishment . . ., and to afford adequate deterrence."  Finally, counsel again reiterated that the judge should avoid an "unwarranted . . . disparit[y]" with the two cases discussed above, in which the sentences were thirty and forty-six months. The defendant then presented an extended statement emphasizing his shame and remorse.

Government counsel, in response, stated that defense counsel was arguing "that the victim impact statement[s] should not have any bearing on the Court's sentence," and argued to the contrary that the statements "should have a great bearing on the Court's sentence because [they] go[] to the heart of what the punishment should be in this case, for a man who abused his authority and took advantage of a vulnerable girl, using that authority."  Although the government had advocated a within-guidelines sentence in its previous filings, government counsel did not discuss the appropriate length of sentence at the sentencing hearing.  Defense counsel then clarified that "I did not try to say that the impact statement[s] should have no effect on the sentence.  I said, they should not be the entire sum and substance of the Court's thinking in the matter."  Defense counsel also argued that the content of the victim impact statements "is clearly contemplated, unfortunately, by the very nature of this . . . offense, and it is what drives already the Sentencing Guidelines range."

**2.**

After confirming that neither side had anything further to present, the District Court sentenced Ausburn to 144 months' imprisonment, noting that this was "double the upper end of the sentencing guideline range."  The court stated its reasons for the 144-month term as follows:

> The Court considers the sentence imposed to be sufficient, but no greater than necessary, for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide

for just punishment. The offense, as was said earlier, it's a serious offense and your position as a law enforcement officer makes your violation of the law that much more unacceptable.

The sentence is also sufficient, but no greater than necessary, to afford adequate deterrence, protect the public against commission of further crimes by this defendant, and provide the defendant with needed and effective educational or vocational training, medical care, or other correctional treatment.

Additionally, the Court has considered all the other factors set forth in [18 U.S.C. § 3553(a)], including the nature and circumstances of the offense, which this Court finds to be particularly troubling, as I have mentioned, the defendant's history and characteristics, and the kind of sentences available for this offense.

The Sentencing Guidelines, under the advisory Guidelines . . . as I said previously, I've doubled the maximum under the Guidelines because I believe it's appropriate to the facts of this case.

I've also considered any applicable policy statements adopted by the Sentencing Commission, the need to avoid unwarranted sentencing disparities among the defendants with similar records who found themselves guilty of similar conduct, and the need to provide restitution to any of the victims of the offense.

As I said before, your conduct was totally unacceptable and you deserve double the number

that I set forth in the Sentencing Guidelines.

Defense counsel immediately objected "to the lack of notice of the Court's intention to deviate from the advisory range," arguing that "the amount of deviation is unreasonable, in light of the facts of this case." Defense counsel stated: "I can only be afraid that it has something to do with something I'm unaware of, because this case, as I see it, is very, very, so close to the Kenrick case, where the Court did impose [forty-six] months, that I can't see this as being a reasonable exercise of discretion under [section] 3553(a)."

Apparently in response to this objection, the court then made the following statement:

> Well, let me just add. As to the position of trust, I've already considered that in dealing with the factors for the—from the [PSR] and for the point count thereunder.
>
> I don't know what else to say. If you think other than this is a serious crime, and four years of imprisonment I find to be insufficient. Six years I find to be insufficient. And you can handle, handle that matter on appeal.

Before closing the proceeding and placing Ausburn in custody, the court added "I also, respectfully, remind counsel that I made a point in the questioning relating to the guilty plea to make sure that everyone understood the potential within the Court's discretion to even go to the maximum, of which my sentence is less than the maximum."

Ausburn filed a timely notice of appeal.[10]

---

[10] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; we have jurisdiction over Ausburn's appeal of his sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

We exercise plenary review over Ausburn's claim that his sentencing proceeding failed to comport with the Due Process Clause. *See United States v. Dees*, 467 F.3d 847, 854 (3d Cir. 2006), *petition for cert. filed*, No. 06-10826 (U.S. Apr. 18, 2007). Ausburn's sentence is reviewed for "reasonableness." *See United States v. Grier*, 475 F.3d 556, 568, 571 (3d Cir. 2007) (en banc), *petition for cert. filed*, No. 06-11486 (U.S. May 22, 2007). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the [sentencing] factors enumerated in 18 U.S.C. § 3553(a)." *Id.* at 571.[11] The specific contours of reasonableness review are discussed further below. *See infra* Part III.B.

## III.

Ausburn argues that (a) he was denied due process because the District Court failed to provide advance notice of its intent to sentence him above the advisory guidelines range; and (b) the sentence imposed by the District Court was unreasonable. In Part III.A, *infra*, we find that the District Court's failure to provide advance notice before imposing a sentence above the advisory sentencing guidelines range, based on its consideration of the sentencing factors prescribed by 18 U.S.C. § 3553(a), did not violate the Due Process Clause. However, in Part III.B, *infra*, we find that the District Court's imposition of a 144-month term of imprisonment was unreasonable, because the District Court did not provide

---

[11] *Cf. Rita v. United States*, --- U.S. ----, 127 S. Ct. 2456, 2465 (2007) (referring to "our explanation in *Booker* that appellate 'reasonableness' review merely asks whether the trial court abused its discretion"); *id.* at 2470–71 & n.2 (Stevens, J., concurring) (describing reasonableness review as "an abuse-of-discretion standard").

sufficient reasons on the record to justify its sentence. Accordingly, we will vacate Ausburn's sentence and remand for a new sentencing proceeding.

## A.

In general, procedural due process requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).[12] In the criminal context, "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (plurality opinion) (capital case); *accord United States v. Mannino*, 212 F.3d 835, 845–46 (3d Cir. 2000) ("Obviously, a criminal defendant must be afforded due process at sentencing.") (non-capital case).

In particular, due process in criminal sentencing requires that a defendant receive notice of, and a reasonable opportunity to comment on, (a) the alleged factual predicate for his sentence, and (b) the potential punishments which may be imposed at sentence. *See United States v. Nappi*, 243 F.3d 758, 763–64 (3d Cir. 2001); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (stating that it is "a requirement of fair play" that a criminal "sentence [is] not predicated on misinformation"); *Marks v. United States*, 430 U.S. 188, 191–92 (1977) ("[A] right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of constitutional liberty"). In federal practice, a defendant's "due process right to be sentenced based upon accurate information" is "safeguard[ed]" by Federal Rule of Criminal Procedure 32, which "contains specific requirements that ensure that the defendant is made aware of the evidence to be considered and

---

[12] *See* U.S. CONST. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law . . . .").

potentially used against him at sentencing, and is provided an opportunity to comment on its accuracy." *Nappi*, 243 F.3d at 763. Chief among the protections provided by Rule 32 is the requirement that the Probation Office conduct a presentence investigation and produce a thorough presentence investigation report ("PSR"[13]). *See Nappi*, 243 F.3d at 763–64 & n.4 (citing numerous provisions of Fed. R. Crim. P. 32[14]); Fed. R. Crim. P. 32(c)–(d).[15] All parties receive notice of the PSR and are entitled to (a) object to the facts stated or the facts omitted, (b) present evidence on these objections, and (c) make arguments at sentencing. *See* Fed. R. Civ. P. 32(e)–(i). In addition, notice of potential punishments is afforded by Congress's recitals as to sentence in the provisions of the United States Code cited in the charging document. *See United States v. Pennavaria*, 445 F.3d 720, 723–24 (3d Cir. 2006) (United States Code provided "fair warning" that criminal defendant could be sentenced to prison term up to statutory maximum), *cert. denied*, 127 S. Ct. 531 (2006).

There is no merit in Ausburn's argument that he lacked effective notice of the factual predicate of his sentence, or of the potential punishment for his crime. As to the factual predicate for his sentence, Ausburn does not identify any fact relied on by

---

[13] The presentence investigation report is also sometimes referred to by the acronym "PSI."

[14] The provisions of the Rule 32 cited in *Nappi* have since been renumbered and reorganized, but the current Rule is substantively similar, for purposes of our discussion, to the version analyzed by *Nappi*. *Cf. infra* note 15.

[15] The District Court must, in most cases, order the Probation Office to prepare a PSR. Fed. R. Crim. P. 32(c)(1). The PSR must include, *inter alia*: an analysis of the proper application of the Sentencing Guidelines to the case, *id.* 32(d)(1); factual information as to the defendant's history and characteristics, *id.* 32(d)(2)(A); an assessment of the impact of the crime on any victims, *id.* 32(d)(2)(B); and "any other information that the court requires," *id.* 32(d)(2)(F).

the District Court which was not included in the thorough PSR prepared by the Probation Office. And Ausburn received adequate notice of the potential punishment when he waived indictment and was charged in a criminal information with violation of 18 U.S.C. § 2422(b) which, at the time, provided for a "fine[] . . . and imprison[ment of] not less than 5 years and not more than 30 years." 18 U.S.C. § 2422(b) (2006).[16]

Nonetheless, Ausburn claims that his due process rights were violated when the District Court imposed a sentence of incarceration in excess of the advisory guidelines range (which was fifty-seven to seventy-one months) without first giving notice of its intention to do so. Ausburn contends that "a defendant should receive prior notice of any deviation from the applicable guideline range, regardless of the reason for it." Specifically, he contends that he was subject to unfair surprise because he "had no idea that the district court intended to double his sentence based upon victim statements," and that "had [he] received prior notice, he could have taken action to mitigate the victim statements, with evidence believed to exist."[17] Notably,

_____

[16] Section 2422(b) has since been amended to provide for a mandatory minimum sentence of ten years and a maximum sentence of life. *See* Adam Walsh Child Protection Safety Act of 2006, Pub. L. No. 109-248, § 203, 120 Stat. 587, 613 (July 27, 2006).

[17] Ausburn's argument on this point is a bit unclear. Some statements in Ausburn's briefs on appeal can be interpreted as an argument that Ausburn was sentenced based on alleged facts which were presented for the first time during victim impact statements at sentencing. But Ausburn acknowledges in another section of his argument that the victim impact statements at his sentencing "presented only an emotional appeal and no new facts," and that the facts alleged in those statements "were already accounted for in the [PSR's] guideline computation for the offense." At any rate, even without this concession, we are satisfied that all material facts included in the victim impact statements presented at Ausburn's sentencing had already been canvassed in the "victim impact"

Ausburn does not specify the nature of the rebuttal evidence that he would have offered if he "had received prior notice." More important, Ausburn *did* receive prior notice of the substance of the expected statements. The PSR's "victim impact" section provided notice of the material facts alleged in the victim impact statements, as well as the claimed emotional impact on the victim and her family. And, after *Booker*, the factors which a district court will take into account at sentence are clear: "*Booker* contemplates that the district court will impose a discretionary sentence after consideration of the advisory Guidelines, the grounds raised by counsel, the defendant's allocution, victim statements, other evidence, and the factors set forth in § 3553(a)." *Vampire Nation*, 451 F.3d at 197 (emphasis and footnote omitted).[18]

---

section of the PSR. *See* text *infra*; *cf. United States v. Curran*, 926 F.2d 59, 62–63 (1st Cir. 1991) (adopting rule that defendants must have opportunity to contradict "statements of fact contained in [victim] letters" to the court, when such statements "[a]re not included in the [PSR's] 'victim impact' report").

Further, we perceive no violation of due process in the "emotional appeal" presented by the victim impact statements. While it may be true that the statements presented a compelling account of the harms allegedly wrought by Ausburn's conduct, this is inherent in the victim's right to attend court and present his or her own account of the crime and its impact. *See Vampire Nation*, 451 F.3d at 197 n.4 (unlike typical fact witnesses offered at sentencing, crime victims possess a "right . . . in the nature of an independent right of allocution at sentencing"); *cf. Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1013, 1016 (9th Cir. 2006) ("The Crime Victims' Rights Act sought to . . . mak[e] victims independent participants in the criminal justice process."). Nothing in the victim impact statements in this case was so unfairly prejudicial or inflammatory as to present a due process issue.

[18] Subsection 3553(a) provides that, "in determining the particular sentence to be imposed, [the district court] shall consider" the following factors:

It is true that in *United States v. Burns*, *supra*, decided

---

(a) Factors To Be Considered in Imposing a Sentence. . . . The court, in determining the particular sentence to be imposed, shall consider—

>  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>  (2) the need or the sentence imposed-
>>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>  (B) to afford adequate deterrence to criminal conduct;
>>  (C) to protect the public from further crimes of the defendant; and
>>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>  (3) the kinds of sentences available;
>  (4) the kinds of sentence and the sentencing range established for—
>>  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>  (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced[;]
>  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

under the sentencing guidelines when still deemed mandatory, the Supreme Court "held that an earlier version of Rule 32 required district courts to give defendants advance notice before engaging in *sua sponte* upward departures from Guidelines sentences." *Vampire Nation*, 451 F.3d at 195–96 (citing *Burns*, 501 U.S. at 136).[19] And it is also true that—although *Burns* was, as a formal matter, a case of rule interpretation—the Court was at pains to make clear its awareness that the Due Process Clause was close at hand.[20] Ausburn would extend the *Burns*

[19] The Court in *Burns* explained that:

In the ordinary case, the presentence report or the Government's own recommendation will notify the defendant that an upward departure will be at issue and of the facts that allegedly support such a departure. Here we deal with the extraordinary case in which the district court, on its own initiative and contrary to the expectations of both the defendant and the Government, decides that the factual and legal predicates for a departure are satisfied.

*Burns*, 501 U.S. at 135 (footnote omitted). Under such circumstances, the Court chose to construe the relevant Rule 32 language then in effect to ensure "*both* notice *and* a meaningful opportunity to be heard." *Id.* at 137–38 (emphases in original).

In 2002, at a time when the sentencing guidelines were still mandatory, Rule 32 was amended to reflect the teaching of *Burns*. *See Vampire Nation*, 451 F.3d at 195–96. Pursuant to that amendment, Rule 32(h) now requires that a sentencing court give "reasonable notice" to the parties "[b]efore . . . depart[ing] from the applicable sentencing range on a ground not identified . . . in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h).

[20] The Court said:

[W]ere we to read Rule 32 to dispense with notice, we would then have to confront the serious question whether notice in this setting is mandated by the Due Process Clause. Because Rule 32 does not clearly state that a district court *sua sponte* may depart upward from an applicable

-21-

rationale to require not only advance notice of a traditional "departure" under the sentencing guidelines, but advance notice of any sentence outside the guidelines range, including one based on the sentencing court's consideration of the factors enumerated in 18 U.S.C. § 3553(a) (i.e., a sentencing "variance"[21]).

In *Vampire Nation*, we declined to give such a construction to Rule 32(h), concluding that (1) the rationale of *Burns* lacked force after *Booker*; and (2) application of the principles stated in *Burns* to sentencing variances under § 3553(a) would actually contravene the superseding principles stated in *Booker. See Vampire Nation*, 451 F.3d at 196. We explained that:

> [N]ow that *Booker* has rendered the Guidelines advisory, the concerns that animated the Court's decision in *Burns* no longer apply. . . .
>
> Furthermore, the requirement of Rule 32(h) that the court specify "any ground" of contemplated departure from the Guidelines range

---

> Guidelines sentencing range without providing notice to the defendant we decline to impute such an intention to Congress.

*Burns*, 501 U.S. at 138. *But cf. id.* at 146, 155 (Souter, J., dissenting) (arguing that "what the Court d[id] to Rule 32 comes closer to reconstruction than construction").

[21] An upward variance is a (post-*Booker*) decision to sentence above the advisory guidelines range based on the § 3553(a) factors. *See Jackson*, 467 F.3d at 837 n.2. An upward variance is distinguished from an upward departure, which is a decision to increase the guidelines range "for reasons contemplated by the Guidelines themselves (under U.S.S.G. § 4A1.3 and Ch. 5, Pt. K)." *Id.*; *see also, e.g.*, U.S.S.G. § 4A1.3 ("Departures Based on Inadequacy of Criminal History Category (Policy Statement)").

was designed for pre-*Booker* departures, which were constrained by the provisions of the Guidelines pertaining to departures. The Guidelines have now become advisory and they no longer limit the grounds a court can consider at sentencing. Thus, the Guidelines are now only one factor among many which can influence a discretionary sentence. Application of the advance notice requirement of Rule 32(h) to discretionary sentenc[ing] would elevate the advisory sentencing range to a position of importance that it no longer can enjoy.

*Id.* (internal quotation marks and citation omitted). We further observed that the proposed requirement of advance notice for sentencing variances was unnecessary after *Booker*: "Because defendants are aware [prior to sentencing] that district courts will consider the factors set forth in § 3553(a), we believe the element of 'unfair surprise' that *Burns* sought to eliminate is not present." *Id.* (citing *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 314 (2006)).

Although *Vampire Nation*, like *Burns*, was technically a rule-interpretation case, we see no reason to vary either the analysis or the result of *Vampire Nation* in light of Ausburn's analogous claim, brought directly under the Due Process Clause. As noted above, due process requires reasonable notice and a meaningful opportunity to be heard in regard to both the factual predicate of a sentence and the potential punishments which may be imposed at sentencing. But in the common run of cases, the protections of Rule 32, combined with the general character of post-*Booker* sentencing, will be sufficient to put the defendant on notice of the factual predicate for his sentence, the potential penalties for his conduct—i.e., the full range of statutorily-authorized punishment—and the factors to be considered in setting those penalties. *See Vampire Nation*, 451 F.3d at 196; *see also United States v. Irizarry*, 458 F.3d 1208, 1212 (11th Cir. 2006) (per curiam) ("After *Booker*, parties are

inherently on notice that the sentencing guidelines range is advisory and that the district court must consider the factors expressly set out in section 3553(a) when selecting a reasonable sentence between the statutory minimum and maximum."), *petition for cert. filed*, No. 06-7517 (U.S. Oct. 26, 2006).

As a practical matter, the advisory range continues to hold significant sway in most cases even after *Booker*. *See Cooper*, 437 F.3d at 331; *Rita v. United States*, --- U.S. ----, 127 S. Ct. 2456, 2463–65 (2007). Yet a reasonable and prudent defendant must be prepared to argue for an appropriate sentence based on all of the sentencing factors[22]; the defendant may no longer assume that the range of potential punishment is effectively bounded by the guidelines range (as modified by any requested guidelines departures). *See Vampire Nation*, 451 F.3d at 196; *cf. Rita*, 127 S. Ct. at 2465 ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").[23] For this reason, the Supreme Court's discussion in *Burns* is without application here. The point of *Burns* was precisely that, *under the mandatory guidelines*, defendants *were* entitled to assume that the range of potential punishment was bounded by the guidelines range, as modified by any requested departures not yet ruled on. *See Burns*, 501 U.S. at 134–35. After *Booker*, "the element of 'unfair surprise' [arising from a non-guidelines sentence] that *Burns* sought to eliminate is not present." *Vampire Nation*, 451 F.3d at 196.

Of course, we do not foreclose the possibility that—in a particular case—a district court's failure to provide notice before imposing a sentencing variance may present due process concerns. For example—as in the hypothetical offered by

---

[22] *See supra* note 18 (listing § 3553(a) factors).

[23] *Rita* upheld the Fourth Circuit's use of "an *appellate* court presumption" that a within-guidelines sentence is reasonable. *Rita*, 127 S. Ct. at 2465 (emphasis in original), *affirming* 177 Fed. App'x 357 (4th Cir. 2006). However, *Rita* did not *require* appellate courts to so presume.

Ausburn's counsel at oral argument—a witness or victim representative might allege theretofore-unrevealed facts at the sentencing hearing which would, if unrebutted, clearly affect the sentencing court's thinking, and to which the defendant could not effectively respond on short notice. *Cf. Curran*, cited *supra* note 17. But such a scenario is not before us today, and the mere possibility of such a case does not justify the broad rule advocated by Ausburn. Rather, we expect that existing procedures—such as the right to object to sentencing information at any time upon good cause and the option to move for a continuance to avoid unfair surprise—will provide an effective remedy in individual cases,[24] and our appellate review is broad enough to police any violations of due process.[25] *Cf. Burns*, 501 U.S. at 155 (Souter, J., dissenting) ("[E]xisting process provides what is due without resort to [the proposed] requirement.").

In sum, we decline to adopt a constitutional rule requiring a sentencing court to give advance notice before imposing any sentence outside of the advisory guideline range.[26] Further,

_____

[24] *See* Fed. R. Crim. P. 32(i)(1) ("[T]he court . . . may, for good cause, allow a party to make a new objection at any time before sentence is imposed."); *Virgin Islands v. Charleswell*, 115 F.3d 171, 174–75 (3d Cir. 1997) (discussing considerations in granting or denying a request for continuance in a criminal case and noting that "a rigid insistence on expedition despite a legitimate reason for delay may deprive an accused of due process of law" (internal quotation marks omitted)).

[25] *See United States v. Khorozian*, 333 F.3d 498, 507 (3d Cir. 2003) (stating that denial of "a request for a continuance constitutes an abuse of discretion . . . when it [is] so arbitrary as to violate due process" (internal quotation marks omitted)).

[26] Of course, nothing in the above analysis should discourage a district court from giving the parties advance word of its thinking if, prior to the hearing, the court is strongly inclined to impose a sentence outside (above or below) the advisory range. Such notice, where practicable, will usually

because the specific facts of this case do not show that Ausburn was subjected to any unfair surprise at sentencing, Ausburn's due process challenge must fail.

**B.**

We now turn to Ausburn's claim that the sentence imposed by the District Court was unreasonable.

It is common ground that, after *Booker*: (1) a sentencing court, though it must continue to consult the sentencing guidelines on an advisory basis,[27] has discretion to craft an appropriate sentence falling anywhere within the range of punishments authorized by Congress; and (2) "appellate courts must review [these] sentences for reasonableness." *United States v. Charles*, 467 F.3d 828, 830 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1505 (2007). Further, it is clear that both the district court's crafting of an appropriate sentence and the appellate court's review of that sentence for reasonableness must be "guided by the factors set forth in 18 U.S.C. § 3553(a)."[28]

---

promote both fairness and the efficient administration of justice by allowing the parties to better prepare and focus their arguments to accord with the court's concerns.

[27] District courts "must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*," including "formally rul[ing] on the motions of both parties and stat[ing] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[ing] into account . . . pre-*Booker* case law, which continues to have advisory force." *United States v. Charles*, 467 F.3d 828, 830–31 (3d Cir. 2006) (internal quotation marks omitted), *cert. denied*, 127 S. Ct. 1505 (2007); *see also* 18 U.S.C. § 3553(a)(4) (listing applicable guidelines range as one of several factors which the district court must consider in sentencing).

[28] The section 3553(a) factors are listed in Part III.A, *supra*. *See supra* note 17.

*Cooper*, 437 F.3d at 327.

In considering a criminal defendant's claim that a sentence is unreasonable, a reviewing court asks whether the district court: (1) exercised its discretion by giving "meaningful consideration" to the § 3553(a) factors; and (2) applied those factors reasonably by selecting a sentence grounded on reasons that "are logical and consistent with the [§ 3553(a)] factors." *Id.* at 329–30 (internal quotation marks omitted). When we reach "this last step, we apply a deferential standard, 'the trial court being in the best position to determine the appropriate sentence in light of the particular circumstances of the case.'" *United States v. Hankerson*, --- F.3d ----, 2007 WL 2177168, at *4 (3d Cir. 2007) (quoting *Cooper*, 437 F.3d at 330);[29] *cf. Rita*, 127 S. Ct. at 2474 (Stevens, J., concurring) ("Although I would have imposed a lower sentence had I been the District Judge, I agree that he did not abuse his discretion in making the particular decision that he did."). However, we will not reach this last, deferential step if we are not able first to satisfy ourselves that the sentencing court actually exercised its discretion. *Cf. Cooper*, 437 F.3d at 330 (noting that "[w]e are not sentencing judges," and that the matter for a reviewing court's determination is "whether the *district judge* imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a)" (internal quotation marks omitted) (emphasis added)).

---

[29] This latter step has been characterized as review of the "substantive" reasonableness of the sentence, whereas the former step—determining whether the district court actually exercised its discretion—has been described as "procedural" review. *See Hankerson*, --- F.3d at ----, 2007 WL 2177168, at *4–6; *United States v. Lessner*, --- F.3d ----, 2007 WL 2257630, at *15–16 (3d Cir. 2007); *accord United States v. Bailey*, 488 F.3d 363, 368 n.1 (6th Cir. 2007); *Rita*, 127 S. Ct. at 2482–83 (Scalia, J., concurring in part and in judgment). *But cf. Rita*, 127 S. Ct. at 2483 n.6 (Scalia, J., concurring in part and in judgment) ("'Substance' and 'procedure' are admittedly chameleon-like terms."); *Bailey*, 488 F.3d at 368 n.1 (same).

Therefore, in order to provide for effective appellate review, the sentencing court must provide a record sufficient to allow a reviewing court to conclude that the sentencing court exercised its discretion.[30] Of course, while the record must be adequate for review, it need not be perfect. We have recognized that "sentencing judges normally state and resolve sentencing issues from the bench while the sentencing proceeding is underway," and that these contextual and "often spontaneous remarks are addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of all of the surrounding law." *Cooper*, 437 F.3d at 330 n.8 (internal quotation marks omitted); *cf. Rita*, 127 S. Ct. at 2468 (noting that "the law leaves much . . . to the judge's own professional judgment," and that "[s]ometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation").

But if review in this area is necessarily flexible, and if "a rote statement of the § 3553(a) factors," will not always be either necessary or sufficient to satisfy the requirements of reasonableness,[31] we have stated at least one concrete

---

[30] As we stated in a different context in *United States v. Johnson*, 388 F.3d 96 (3d Cir. 2004), "if the district court does not articulate the reasons underlying its decision there is no way to review its exercise of discretion." 388 F.3d at 101; *see Cooper*, 437 F.3d at 329 (adopting *Johnson* language); *see also id.* at 330 n.9 (noting that "the requirement that a court actually exercise [its] discretion . . . [is] not unique to sentencing decisions," but that this requirement is "applied whenever we review decisions committed to the discretion of another entity").

[31] *Compare Cooper*, 437 F.3d at 329 ("The court need not discuss every argument made by a litigant if an argument is clearly without merit . . . .[or] discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." (citation omitted)), *with id.* ("[A] rote statement of the § 3553(a) factors should not suffice if . . . [a party] properly raises a ground of recognized

requirement to establish that the sentencing court gave meaningful consideration to the relevant § 3553(a) factors: the court must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis. *See Cooper*, *supra* note 31; *Jackson*, 467 F.3d at 841 ("[T]he record must show . . . a recognition of, and response to, the parties' non-frivolous arguments.");[32] *accord Rita*, 127 S. Ct. at 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. . . . Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally . . . explain why he has rejected those arguments." (citations omitted)).

### 1.

The statement of reasons provided by the District Court in this case—which is set forth above in substantially its

---

legal merit (provided it has a factual basis) and the court fails to address it." (internal quotation marks omitted)).

[32] *See generally United States v. Moore*, 540 F.2d 1088, 1091–92 & nn. 3–8 (D.C. Cir. 1976) (separate statement of Bazelon, C.J.) (reviewing cases and literature and discussing—several years before the guidelines era—the "salutary purposes generally served" by "a statement of sentencing rationale").

We have expressly declined to hold that "a district court's statement that it considered both the defendant's arguments and the § 3553(a) factors at sentencing is by itself sufficient for *Booker* purposes." *Cooper*, 437 F.3d at 329 n. 6; *see also Jackson*, 467 F.3d at 841; *Charles*, 467 F.3d at 837–38. *Contra United States v. Scott*, 426 F.3d 1324, 1329–30 (11th Cir. 2005); *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam) (stating that once district court has "acknowledg[ed]" that it considered defendant's arguments and the § 3553(a) factors, it is "unnecessary" for district court to "elaborate on the basis for its sentence").

complete form, *see supra* Part I.C.2—did not address at least one potentially meritorious argument advanced by Ausburn.[33] In particular, the District Court did not address Ausburn's argument that two cases recently decided in the same district—both of which concerned sexual offenses involving minors—provided bench marks for determining a proper sentence, and that the court should hew close to the sentences in those cases (thirty months and forty-six months) in order to "avoid unwarranted sentence disparities among [similarly-situated] defendants," 18 U.S.C. § 3553(a)(6). Ausburn made

---

[33] Also, the District Court did not comply with 18 U.S.C. § 3553(c). Section 3553(c) provides that the sentencing judge "shall state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). In addition, if the sentence is outside the guidelines range, the sentencing judge must, in most cases, state "the specific reason for the imposition of a [non-guidelines-range] sentence." *Id.* § 3553(c)(2). The reason for imposing a non-guidelines-range sentence "must also be stated with specificity in the written order of judgment and commitment." *Id.* In the case at bar, the written order of judgment and commitment does not appear to make any mention of the District Court's "reason for the imposition of a [non-guidelines-range] sentence."

Since we remand on *Booker* grounds, there is no formal necessity for us to reach this statutory issue. However, in light of the Supreme Court's recent dicta in *Rita*, we have thought it useful to draw attention to the continued vitality of § 3553(c). *See Rita*, 127 S. Ct. at 2468 (treating § 3553(c) as still in force, post-*Booker*, and discussing requirements under § 3553(c)); *cf. id.* at 2482–83 (Scalia, J., concurring in part and in judgment) (observing that the "explanations" required by § 3553(c) "help the [Sentencing] Commission revise the advisory Guidelines to reflect actual sentencing practices consistent with the statutory goals" and noting that "reasonableness review g[i]ve[s] appellate courts the necessary means to reverse a district court that . . . does not comply with § 3553(c)'s requirement for a statement of reasons"); *id.* at 2488 (Souter, J., dissenting) (referring to "unorthodox factfinding necessary to justify a sentence outside the Guidelines range" under § 3553(c)(2)).

this argument in his pre-sentencing filings, at the sentencing hearing, and even in an objection immediately following the District Court's pronouncement of sentence. *See supra* Part I.C.2. In its initial statement of reasons, the District Court merely recited that it had "considered . . . the need to avoid unwarranted sentencing disparities among the defendants with similar records who found themselves guilty of similar conduct." Upon objection to the 144-month sentence by Ausburn's counsel on the grounds of an unwarranted disparity with the sentence in *Kenrick*,[34] the District Court made the following statement:

> Well, let me just add. As to the position of trust, I've already considered that in dealing with the factors for the—from the [PSR] and for the point count thereunder.
>
> I don't know what else to say. If you think other than this is a serious crime, and four years of imprisonment I find to be insufficient. Six years I find to be insufficient. And you can handle, handle that matter on appeal.

To the degree that this comment may be thought responsive to counsel's objection, it is inadequate to demonstrate that the District Court gave meaningful consideration to counsel's arguments about an unwarranted disparity between the Ausburn and Kendrick sentences.[35] The

---

[34] *See supra* Part I.C.2 (quoting defense counsel's statement that: "I can only be afraid that [the 144-month sentence] has something to do with something I'm unaware of, because this case, as I see it, is very, very, so close to the *Kenrick* case [where the sentence was forty-six months]. . . ."); *cf. Kenrick*, 2007 WL 2384232, at *1, *3–4 (Parts II.A, II.D).

[35] We are also aware that the sentencing in this case took place before our decision in *Charles*, in which Charles claimed an unwarranted sentencing disparity. *See* 467 F.3d at 831. As

District Court's language, though brief, may be read as a reference to the fact that Ausburn, unlike Kenrick, occupied a position of trust as a police officer. This is certainly a relevant consideration. But in the above excerpt from the District Court's statement of reasons, the court seems to imply that the advisory guidelines range already incorporated an enhancement based on Ausburn's abuse of a position of trust. *See* U.S.S.G. § 2A3.2(b)(1) (2002) (providing for two-offense-level enhancement "[i]f the victim was in the custody, care, or supervisory control of the defendant"); *see also supra* note 5. The Supreme Court has recently explained that "[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . in the typical case, and that the judge has found that the case before him is typical." *Rita*, 127 S. Ct. at 2468. By contrast, in this case, the District Court alluded to the guidelines calculation but nonetheless imposed a sentence more than twice as high as that called for by the guidelines. In so doing, the District Court gave no indication of why Ausburn's "circumstances present[ed] an 'atypical case' . . . fall[ing] outside the 'heartland' to which the United States Sentencing Commission intends each individual Guideline to apply."[36] *Rita*,

---

an appellate court, we noted that "[w]e are in no position to determine — as a matter of fact — whether Charles's circumstances exactly paralleled those of the defendants in these cases; we leave that determination to the sentencing judge." *Id*. at 833 n.7. We also stated that we will "tolerate statutory sentencing disparities so long as a judge demonstrates that he or she viewed the Guidelines as advisory and reasonably exercised his or her discretion . . . ." *Id*. at 833.

[36] In other cases, we have emphasized the fact that a sentencing court must provide a "fuller explanation" when it "imposes a sentence that varies significantly from the advisory Guidelines range and a party has made objections with legal merit that the variance is unjustified by the record." *Kononchuk*, 485 F.3d at 204. And, in general, our cases have endorsed the proposition stated in *United States v. Jordan*, 435 F.3d 693,

127 S. Ct. at 2461. The District Court may have had in mind reasons that were "logical and consistent with the [§ 3553(a)] factors," *Cooper*, 437 F.3d at 330 (internal quotation marks omitted), but it did not articulate those reasons. *Cf. Kononchuk*, 485 F.3d at 206 ("If there is a way to find this sentence reasonable in light of the § 3553(a) factors, the District Court did not articulate it. Due to this failure of articulation, we cannot be satisfied that the District Court gave 'meaningful consideration' to the § 3553(a) factors.").

Where the record is inadequate, we do not fill in the gaps by searching the record for factors justifying the sentence. *Cf. Cooper*, 437 F.3d at 330 ("The question is not how we ourselves would have resolved the factors identified as relevant by section 3553(a) . . . ." (internal quotation marks omitted)).[37] Accordingly, we will vacate the sentence and remand for a new sentencing proceeding.

---

696–97 (7th Cir. 2006), *cert. denied*, 126 S. Ct. 2050 (2006), that: "The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be." *See United States v. King*, 454 F.3d 187, 195 (3d Cir. 2006) (quoting *Jordan*); *United States v. Manzella*, 475 F.3d 152, 161 (3d Cir. 2007) (citing *King*); *cf. Rita*, 127 S. Ct. at 2468 ("Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so."); 18 U.S.C. § 3553(c)(2) (see discussion *supra* note 33). *But cf. Rita*, 127 S. Ct. at 2467 ("[A] number of circuits adhere to the proposition that the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance. . . . We will consider that approach next Term in *United States v. Gall*, No. 06-7949."); *United States v. Gall*, 446 F.3d 884 (8th Cir. 2006), *cert. granted*, 127 S. Ct. 2933 (June 11, 2007).

[37] Similarly, the government's cataloguing, in its brief on appeal, of record evidence which it argues is "sufficiently extraordinary to support Ausburn's sentence of 144 months," *see* Appellee's Br. 37–38, cannot substitute for the lack of such a statement by the District Court.

\* \* \*

For the reasons stated above, the sentence imposed March 31, 2006 is vacated, and the case is remanded for further proceedings consistent with this opinion.