**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

09-4357
_____

UNITED STATES OF AMERICA

v.

JOHN DOE,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00397-001)
District Judge: Hon. R. Barclay Surrick
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2010

BEFORE: MCKEE, <u>Chief Judge</u>,  SLOVITER and COWEN , <u>Circuit Judges</u>

(Filed: January 5, 2011)
━━━━━━━━━━

OPINION
_____

COWEN, <u>Circuit Judge</u>.

John Doe appeals from the criminal judgment entered by the United States District

Court for the Eastern District of Pennsylvania, asserting that his sentence was

procedurally unreasonable. We will affirm.

I.

On February 24, 1999, Doe, a native and citizen of Jamaica, unsuccessfully attempted to enter the United States using a fraudulently obtained visa issued under a false name. He was immediately deported to Jamaica on the very next day. Using a fraudulent Jamaican passport issued under another false name, Doe reentered the United States on August 23, 2003. He was eventually convicted in the United States District Court for the Eastern District of Pennsylvania on charges of illegal reentry after deportation, making false claims of citizenship as well as false statements to law enforcement officers, unlawful possession of a firearm by an illegal alien, and possession of marijuana with intent to distribute. On November 15, 2004, the District Court sentenced Doe to a term of imprisonment of 35 months followed by a period of supervised release. He was then deported on February 22, 2007.

Doe subsequently returned to the United States. After the Pennsylvania Department of Transportation reissued a driver's license to Doe under yet another false name, he was eventually arrested and charged with one count of illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). Doe pled guilty on August 3, 2009.

In computing the sentencing range under the Sentencing Guidelines, the probation officer applied U.S.S.G. § 2L1.2(b)(1)(A)(i). This provision requires that the offense level "be increased by 16 levels since the defendant was previously deported after sustaining a conviction for a felony that was a drug trafficking offense for which the

2

imposed sentence exceeded 13 months." (PSR ¶ 21.) Doe's base offense level accordingly went from 8 to 24. He also received credit for accepting responsibility, lowering his offense level by 3. The probation officer's calculation ultimately yielded an adjusted offense level of 21. Given a Category III criminal history, the resulting Guideline range was 46 to 57 months.

According to Doe, the Guideline range, in the absence of "the 16-level enhancement," would have been only 2 to 8 months. (Appellant's Brief at 7.) Alternatively, "[i]f the marijuana offense had been treated as an 'aggravated felony' . . . the sentencing range would have been 18 to 24 months." (Id.)

Both the prosecution and the defense submitted sentencing memoranda to the District Court. In his 15-page memorandum, Doe asked the District Court to impose a sentence below the probation officer's calculated range for a number of reasons, framing his various arguments in terms of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). In particular, he argued, in connection with the need "[t]o reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense," that "[a] downward variance is necessary and warranted to address the excessive severity of the 16-level increase at U.S.S.G. § 2L1.2(b)(1)(A)." (A34.) Submitting an exhibit in support of his challenge, he purported to describe in some detail the various problems with this Guideline enhancement.

A sentencing hearing was then conducted on November 3, 2009. Counsel for both the government and Doe stated that there were no objections to the presentence

3

investigation report. After noting the Guideline range calculation in this report and adopting the report's factual statements, the District Court informed the defense counsel that he was ready to "hear whatever you have to say." (A74.) Doe's attorney asked whether the defense's sentencing memorandum had been received. The District Court answered in the affirmative and then stated, "I have read it. I've read the Government's sentencing memorandum. I've – they're made a part of the record." (A74-A75.) The defense counsel accordingly noted that, "as I described in the memo, I won't go into detail, but [Doe] came back under very difficult circumstances." (A75.)

The defense counsel then proceeded to address at some length several of the arguments raised in Doe's sentencing memorandum, with the critical exception of his challenge to the Guideline enhancement. The attorney accordingly discussed Doe's background, his personal and family circumstances, his purported reasons for leaving Jamaica and returning to the United States (e.g., the fear of political violence), his past efforts at cooperation, and his desire to cooperate in the future. The defense counsel specifically requested a variance due to the absence of a "fast-track" program for illegal reentry cases in the Eastern District of Pennsylvania. Doe was also scheduled to be sentenced by another District Judge for his violation of the term of supervised release imposed in 2004, and the defense counsel expected that his client would receive a consecutive sentence for this violation.[1] The defense counsel ultimately asked the District Court to sentence Doe to a 30-month term of imprisonment: "What I would ask

---

[1] It appears that Doe did in fact receive a 3-month consecutive sentence for the supervised

4

Your Honor to do under all the circumstances is to give him a variance and – and not a – not a tremendous variance, but give him a 30 month sentence." (A79-A80.) Such a sentence would have been at the low end of the applicable Guideline range if Doe received a "fast-track" reduction.

On the other hand, the prosecution, pointing to Doe's prior criminal history and other factors, requested a sentence within the Guideline range of 46 to 57 months. In his reply, the defense counsel focused on the question of cooperation. Doe also made a brief statement of his own, apologizing for any inconvenience he may have caused and claiming that he fled Jamaica to the "safest place I ever know on earth." (A91.)

Sentencing Doe to a term of imprisonment of 42 months, the District Court explained its reasoning on the record. It initially noted that "[t]he crime here, reentry after deportation, is a serious crime to begin with," which was "made that much more serious when we have an individual who has been down this road before." (A92.) In particular, Doe was previously deported in 1999, reentered the country, was arrested for illegal reentry as well as for possession of both 100 pounds of marijuana and a firearm, served a prison sentence of 35 months, was deported for a second time, and yet again illegally reentered the country. "[T]he fact that we have been down this road before makes it very difficult for me to take into consideration what may be being done in other jurisdictions" in terms of some sort of "fast-track" program. (Id.) The District Court stated that, "in border states they're not giving an awful lot of consideration to somebody

release violation.

5

who's been around the horn three times, so this is a most serious offense." (Id.) On the other hand, the District Court did take into account Doe's purported reasons for coming back to this country as well as his attempts at cooperation (although it also questioned Doe's own explanation for why he returned to the United States given his past history of deception). According to the District Court, it would have actually imposed an even higher sentence in the absence of such considerations. The District Court believed that a term of imprisonment of 42 months, which "is below the Guideline range, but not significantly below the Guideline range," to be followed by a period of 3 years of supervised release, represented "a reasonable sentence under these circumstances." (A94.) In turn, it hoped that Doe would thereby learn his "lesson" from this sentence, although the District Court still expressed some concern about the fact that he previously committed a supervised release violation. (Id.)

In formally imposing the sentence, the District Court stated that this sentence punished Doe for his conduct, will deter others, and will protect the public. In its written statement of reasons, the District Court likewise claimed that the below-Guideline sentence was reasonable under the circumstances, pointing, inter alia, to the serious nature of the instant offense, Doe's status as a repeat offender, and his acts of cooperation.

## II.

Doe contends that his sentence was procedurally unreasonable because the District Court failed to consider his argument that the 16-level enhancement called for by

6

U.S.S.G. § 2L1.2(b)(1)(A) unreasonably overstated the seriousness of the offense.[2]  A sentencing court "must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis."  United States v. Ausburn, 502 F.3d 313, 328-29 (3d Cir. 2007) (citations omitted); see also, e.g., United States v. Sevilla, 541 F.3d 226, 228, 231-33 (3d Cir. 2008).  The government, however, contends that the District Court satisfied its sentencing obligations in this matter and imposed a procedurally reasonable sentence.  In the end, we reject Doe's procedural challenge to the District Court's sentencing determination.

Doe certainly addressed the Guideline enhancement's alleged deficiencies in his sentencing memorandum, specifically asking for a variance on account of the enhancement's allegedly undue severity.  But, at the sentencing hearing itself, neither the defense attorney nor Doe ever mentioned, even indirectly or in passing, the Guideline enhancement and its purported deficiencies.  In contrast, the defense counsel did ask for a lower sentence based on other grounds raised in the sentencing memorandum, including Doe's purported reasons for returning to the United States, his efforts at cooperation, and (especially) the absence of a "fast-track" program in the Eastern District.  Far from explaining the alleged problems with the Guideline enhancement and asking for a variance or a lower sentence because of these problems, the attorney went so far as to

---

[2] The District Court had subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 3231.  We have appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We generally review a district court's sentencing decision for an abuse of discretion, and this review includes determining whether the district court committed a significant procedural error by, for example, failing to consider colorable arguments raised by the

request a 30-month term of imprisonment. Doe's attorney thereby sought a sentence above the range that would have applied in the absence of the Guideline enhancement.

While the District Court certainly could have addressed the attack on the Guideline enhancement in more detail, it quite understandably focused on the various contentions actually raised at the sentencing hearing itself. In any case, the District Court indicated that it had received the defense's sentencing memorandum and read both this memorandum as well as the memorandum submitted by the government. More broadly, the District Court clearly believed that a 42-month sentence, which was itself below the "enhanced" Guideline range as calculated by the probation officer, was necessary and appropriate under the circumstances. Finding Doe's own criminal history to be quite troubling, the District Court emphasized that Doe himself was previously deported, then served a sentence of 35 months for illegal reentry, possession of 100 pounds of marijuana, and illegal possession of a firearm, and, despite still being subject to a term of supervised release, illegally reentered the country yet again. Finally, we must not overlook the practical circumstances surrounding a district court's sentencing determination. See, e.g., Ausburn, 502 F.3d at 328 ("We have recognized that 'sentencing judges normally state and resolve issues from the bench while the sentencing proceeding is underway,' and that these contextual and 'often spontaneous remarks are addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of all of the surrounding law.'" (quoting United States v. Cooper, 437 F.3d 324, 330 n.8 (3d Cir. 2006))).

defendant. See, e.g., United States v. Sevilla, 541 F.3d 226, 230-32 (3d Cir. 2008).

### III.

For the foregoing reasons, we will affirm the District Court's judgment.[3]

---

[3] Doe also filed a motion for leave to proceed under a pseudonym as well as a motion for leave to file the second volume of the joint appendix under seal. Both motions are granted.