

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-2007

# USA v. Hankerson

Precedential or Non-Precedential: Precedential

Docket No. 06-3291

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Hankerson" (2007). *2007 Decisions.* Paper 642.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/642

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3291
_____

UNITED STATES OF AMERICA

v.

DESMOND HANKERSON,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Crim. No. 03-798)
District Judge: Honorable Jose L. Linares

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 29, 2007
_____

Before: BARRY, FUENTES, and GARTH, Circuit Judges
(Opinion Filed:   July 31, 2007)

Richard Coughlin
Kevin Carlucci
Louise Arkel
Office of the Federal Public Defender
972 Broad Street, Fourth Floor
Newark, NJ 07102
          *Attorneys for Appellant*

Christopher J. Christie
George S. Leone
Allen Harberg
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
                    *Attorneys for Appellee*


————————————


OPINION


————————————


Garth, <u>Circuit</u> <u>Judge</u>:

        Appellant Desmond Hankerson contends that his 121-month sentence imposed by the District Court should be vacated because it is unreasonable and because he received ineffective assistance of counsel by the lawyer who handled his sentencing in violation of his rights under the Sixth Amendment to the United States Constitution.  The District Court had subject matter jurisdiction in this case pursuant to 18 U.S.C. § 3231, and we have jurisdiction over the appeal pursuant to 18 U.S.C. § 3742.[1]  We will affirm.


I.

        On March 8, 2002, members of the Newark Auto Theft

————————————

[1]The judgment of conviction and sentence were entered on June 8, 2005.  On November 10, 2005, Hankerson filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence, claiming that he had asked trial counsel to file a notice of appeal but that counsel had failed to do so.  Based on the submissions from all parties, on July 6, 2006, the District Court granted Hankerson's request for permission to file a notice of appeal, and appointed new counsel to represent him. The notice of appeal was then timely filed on July 12, 2006.

Task Force observed a car being driven erratically and at a high rate of speed. They activated their emergency lights and pulled the car over, suspecting that it might be stolen. The car was being driven by Hankerson. Task Force members ordered him to exit the vehicle. Upon exiting, a plastic bag filled with U.S. currency fell out of the car. The police then scanned the rear seat of the car from the outside of the vehicle using their flashlights, and saw two bundles of suspected heroin next to the armrest of the back seat. Hankerson was then placed under arrest. Task Force members then opened the rear door to retrieve the suspected heroin, and noticed what appeared to be a hidden compartment underneath the armrest, from which an item, which appeared to be several more bricks of heroin, was protruding. Ultimately, Task Force members retrieved from the vehicle: twenty-five bricks of heroin; over 2500 glassine envelopes, each containing one of four different "brands" of heroin; approximately one kilogram of cocaine; a .38 revolver loaded with five rounds; and $8,400 in U.S. currency. The total net weight of the seized heroin was 110.2 grams and the total net weight of the seized cocaine was 1,012 grams.

This was Hankerson's third drug arrest that resulted in a conviction. On July 6, 1997, Newark police officers observed Hankerson handing another man what they believed were narcotics and receiving currency. As police approached, Hankerson was observed attempting to discard a brown bag. He was apprehended, and the bag was found to contain 32 vials of cocaine. The incident occurred within 1000 feet of a school. Less than three weeks later, on July 25, 1997, Hankerson was again arrested by the Newark police after being observed participating in another drug transaction. Officers seized 44 vials of cocaine and $120 in U.S. currency from him. On December 1, 2000, Hankerson pled guilty in each of these cases to possession of cocaine with intent to distribute and was sentenced to three years' probation. In March 2002, when Hankerson committed the instant offense, he was still serving these two terms of probation.[2]

---

[2]Hankerson was also found to be in violation of probation on May 9, 2003 and September 15, 2003. In addition, on August 5, 2002, Hankerson admitted to a violation

3

Pursuant to a plea agreement, Hankerson pled guilty to one count of distribution and possession with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), an offense carrying a statutory mandatory minimum of five years' imprisonment. The plea agreement contained stipulations as to the applicable guideline (U.S.S.G. § 2D1.1); the applicable base offense level (26); and the propriety of the two- and one-level downward adjustments for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), respectively. On February 5, 2004, Hankerson pled guilty pursuant to the plea agreement.

Because Hankerson's two offenses in 1997 were for controlled substance crimes and were separated by an intervening arrest, the Presentence Investigation Report ("PSR") calculated his guidelines range using the Career Offender guideline.[3] *See* U.S.S.G. § 4B1.1. This resulted in an offense level of 34 and criminal history category of VI. After deducting three levels for acceptance of responsibility, Hankerson's total offense level was 31.[4] At criminal history category VI, the

_____

of the conditions of his pretrial release in the instant case; he had been released on bond subject to 24-hour house arrest except for employment, but on that date was found neither at home nor at work during a visit by Pretrial Services. As a result of this violation, Hankerson was denied the ability to leave his residence for employment purposes.

[3]An earlier version of the PSR had calculated the guidelines range without concluding that the 1997 offenses were triggering offenses for the Career Offender guideline. The plea agreement's base offense level of 26 was increased by two levels pursuant to U.S.S.G. § 2D1.1(b)(1) (possession of a weapon). After deducting three levels for acceptance of responsibility, the total offense level was 25. Hankerson was given one criminal history point for each of the 1997 offenses, and two more for being on probation at the time of the instant offense. The four criminal history points resulted in a criminal history category of III, which, at offense level 25, meant a guidelines range of 70-87 months' imprisonment.

[4]Hankerson objected to the two-point enhancement for possession of a weapon and to the treatment of the 1997 offenses as separate offenses, but did not specifically

4

guidelines range was 188-235 months' imprisonment.

Hankerson was sentenced on June 6, 2005. At the hearing, defense counsel renewed his objection to the two-level enhancement for presence of a weapon. He also objected to the PSR's mention of the presence of cocaine, but acknowledged that it did not affect the guidelines calculation. Finally, he argued that "in the interest of justice" the 1997 offenses should be treated as related for purposes of the Career Offender guideline, because Hankerson was sentenced for them on the same date and received concurrent sentences. He acknowledged, however, that such treatment was contrary to Third Circuit precedent, and argued, in the alternative, that the court should grant a downward departure because sentencing Hankerson as a Career Offender would overrepresent his criminal history.

The District Court found that the 1997 offenses were properly treated as separate offenses and that they triggered the Career Offender provision. This finding, as the court noted, rendered the objection to the gun enhancement moot, at least as far as the guidelines calculation. The District Court then calculated the advisory guidelines range as 188 to 235 months.

Defense counsel then argued for downward departures on two grounds: Hankerson's history of substance abuse and that the Career Offender guideline overstated Hankerson's criminal history. The District Court denied a departure based on substance abuse, noting that because Hankerson's trouble with substance abuse had ceased by the time he committed the instant offense, there was no causal connection between substance abuse and the crime and therefore a departure was not warranted. The District Court did, however, agree that a downward departure was called for on the issue of the overstatement of criminal history. The Court commented that "unlike other career offenders that come before this court, [Hankerson] never served any prison term before," only

---

address the Career Offender designation. He also objected to the determination of a criminal history category of III, even though this PSR calculated a criminal history category of VI, based on its application of the Career Offender provision.

probation, and that it had been five years since Hankerson had been sentenced for the predicate offenses. (App. 35-36.) Considering the "totality of the circumstances," the Court found that the Career Offender guidelines overstated Hankerson's criminal history, and it departed downward, deciding that a criminal history category of IV (instead of VI) and offense level of 29 (instead of 31) was appropriate. The Court calculated the resulting range at 121-151 months, and indicated to defense counsel that it would next "hear you on leniency of sentence." (App. 37.)

Defense counsel then addressed circumstances relevant to the sentencing factors. He discussed the fact that Hankerson was only 21 when he committed the predicate offenses and only 25 for the instant offense. He noted that Hankerson had already been on house arrest for three years. Counsel discussed the personal tragedy Hankerson had experienced in his youth, including his mother's death when he was nine, being shot by his brother when he was 12, and the recent death of his brother due to heart failure. Counsel explained that the death of Hankerson's mother when he was so young had a profound effect on him, causing him to "go into a shell[,] becoming learning disabled and having trouble in school and dealing with society." (App. 38.) Counsel also pointed out the more positive aspects of Hankerson's life, including his devotion to his four children and his five-year history of employment as a barber. He concluded by emphasizing Hankerson's acceptance of responsibility, and asking for a sentence of the five-year statutory mandatory minimum.

The District Court then discussed the advisory nature of the guidelines, and that the Court's discretion would be exercised with reference to the guidelines calculation and the "other sentencing goals set forth by the Sentencing Reform Act." (App. 41.) The Court then listed several of these goals (*see* App. 41), and proceeded to apply the sentencing factors to the facts of this case:

> I have carefully read, as counsel has noted, the presentence report, as well as the whole history of Mr. Hankerson's life, as has been

6

indicated by counsel here today. . . . Having done all of that, I see that the defendant is, indeed, 27 years of age or 28 at this time, but he does have at least five prior arrests for drug-related offenses, although as we indicated only two convictions, two felony convictions back in 1997. It has been some time since he was arrested for those actions which led to his convictions later on in 2000 and his sentencing in 2000.

I see that he has received the benefit of probation on several occasions apparently to no avail. He continued to engage in the illegal activity of possession and possession with intent to distribute drugs. Probation has done no good for Mr. Hankerson in the past.

At the time of this particular event, he was in possession of a tremendous amount of drugs even if you were to consider only the amount of drugs for which he pled guilty to. Through his attorney, he indicates I should have leniency because he has four children. However, the very poison that poisons the children of our society is what he was peddling, and that was heroin. I look upon that as a very serious offense.

I understand he had some personal tragedy in his life, and I do take that into consideration where to sentence him within the range, but I think that the range that is now indicated, having done the calculations that I did earlier at the level 29, I think is appropriate in this matter.

(App. 40-42.)

The Court then sentenced Hankerson to the bottom end of the revised advisory guidelines range, 121 months' imprisonment.

II.

7

Hankerson challenges his sentence as unreasonable. In evaluating the reasonableness of a sentence imposed by the District Court, this Court engages in a three-stage inquiry. *See United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006). First, we must determine whether the District Court "calculate[d] the correct guidelines range applicable to a defendant's particular circumstances." *Id.* at 330. Second, we must evaluate whether the trial court gave "meaningful consideration" to the factors listed in 18 U.S.C. § 3553(a) and to "any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." *Id.* at 329, 332. Third, if we determine that the District Court did meaningfully consider the § 3553(a) factors, we conclude our review by "ascertain[ing] whether those factors were reasonably applied to the circumstances of the case." *Id.* at 330. In this last step, we apply a deferential standard, "the trial court being in the best position to determine the appropriate sentence in light of the particular circumstances of the case." *Id.* We also note that the party challenging the sentence bears the burden of establishing its unreasonableness, and that a within-guidelines sentence is more likely to be reasonable than one that falls outside the guidelines range. *Id.* at 331-32.

Hankerson takes issue with the District Court's handling of steps two and three, describing his sentence as both procedurally and substantively unreasonable. In terms of procedural unreasonableness, Hankerson claims that the District Court failed to give meaningful consideration to the kinds of sentences available (18 U.S.C. § 3553(a)(3)); to his history and circumstances (18 U.S.C. § 3553(a)(1)); to what he terms the "rehabilitative purpose of sentencing," which he finds in 18 U.S.C. § 3553(a)(2)(D); and to the instruction of 18 U.S.C. § 3553(a) that the court "shall impose a sentence sufficient, but not greater than necessary" to serve the listed purposes of sentencing. 18 U.S.C. § 3553(a).

A.

We find no merit in Hankerson's objections to the "procedural reasonableness" of his sentence. The District Court

8

began by determining that Hankerson was subject to the Career Offender enhancement, and the Court calculated the corresponding guidelines range of 188 to 235 months. (App. 33-34.) The Court then considered and granted defense counsel's motion for a downward departure, finding that the Career Offender provision overstated the defendant's criminal history, especially in light of the Court's observation that "unlike other career offenders that come before this Court, [defendant has] never served any prison term before." (App. 35.) The District Court assessed Hankerson at offense level 29 (as opposed to 31) and criminal history category IV (as opposed to VI), resulting in a guidelines range of 121-151 months.

Next, contrary to Hankerson's assertions, we find that the District Court did meaningfully consider the § 3553(a) factors. In terms of the "kinds of sentences available," we first note that there is a mandatory five years' imprisonment for a violation of 21 U.S.C. § 841(b)(1)(B), constraining the District Court's discretion in this regard. And although we disagree with Hankerson that the term "the *kinds* of sentences available" refers to differences in length of sentence, as opposed to differences in, as it were, *kind* of sentence, we do note that here, the District Court did explicitly consider the length of the appropriate prison term: after departing downward from the originally applicable guidelines range of 188-235 months to 121-151 months, he asked defense counsel for further arguments on "leniency of sentence." (App. 37.) After hearing such arguments, the Court rejected counsel's request for the five-year statutory minimum, noting that "although the guidelines are no longer mandatory," the revised guidelines range "is appropriate in this matter." (App. 41, 42.) Thus, the record does reflect meaningful consideration of this factor.

Furthermore, the District Court did consider Hankerson's history and circumstances, as required by 18 U.S.C. § 3553(a)(1). The Court heard defense counsel's narrative of Hankerson's troubled past, and commented that although he had experienced "some personal tragedy in his life, . . . [the Court believed] that the range that is now indicated . . . is appropriate in this matter." (App. 42.) As for Hankerson's argument that the District Court did not consider the possibility that his substance

9

abuse contributed to his earlier criminal history, we could not and will not fault the District Court in this regard for two reasons: first, defense counsel did not make this argument or ask the Court to consider this connection, and secondly (and perhaps in explanation for defense counsel's failure to make this argument), this Court notes that by Hankerson's own account, his substance abuse ended in 1996, while the offenses exposing him to the Career Offender provisions did not occur until 1997.

Next, Hankerson claims that the sentencing court gave inadequate consideration to the "rehabilitative purpose" of sentencing, referring to 18 U.S.C. § 3553(a)(2)(D). However, although this sentencing factor is the one which most directly addresses the sentencing goal of rehabilitation, *see Rita v. United States*, No. 06-5754, 2007 WL 1772146, at *6 (U.S. June 21, 2007), it does not refer to a general concept of "rehabilitation" as such, but to the more specific need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment . . . ." 18 U.S.C. § 3553(a)(2)(D). By his own account, however, Hankerson was employed as a barber when he was arrested for trafficking in narcotics, and he also submitted evidence that his employer would consider him for re-employment at the conclusion of his sentence; vocational training was thus not the Court's primary concern. In addition, medical treatment for substance abuse addiction was unnecessary as Hankerson stated that his drug use ceased in 1996. As for Hankerson's contention that the fact that he overcame a drug addiction and held a steady job as a barber shows that a shorter sentence would have better served the statute's rehabilitative purpose, he misreads the plain meaning of the statute; 18 U.S.C. § 3553(a)(2)(D) refers to the possibility of providing a person convicted of a crime with training and correctional treatment, not with shortening a sentence because a person is not in need of such things.

Finally, Hankerson argues that the District Court did not explain why the sentence imposed constituted the minimally sufficient sentence. As we recently explained in *United States v. Charles*, 467 F.3d 828 (3d Cir. 2006), this argument must fail: "[b]y demanding that the Court assume the burden of proving that his sentence is *not* unreasonable, [appellant] attempts to flip

10

the reasonableness requirement on its head. We have held that the *defendant* bears the burden of proving that the sentence *was* unreasonable." *Id.* at 833 (citation omitted; first and last emphasis added).

B.

Turning to Hankerson's contention that his sentence was "substantively unreasonable," that is, that the District Court failed to reasonably apply the § 3553(a) factors to the facts of this case, we reject this argument as well. As explained above, after granting a downward departure due to his determination that applying the Career Offender enhancement overstated Hankerson's criminal history, the District Court explicitly considered the five-year gap between the offenses for which Hankerson was convicted; that he continued to engage in illegal activity while on probation; the large quantity of drugs involved; the effect of drugs on society; and the "personal tragedy" in Hankerson's life. (App. 41-42.) In light of these factors, the District Court determined that the revised guideline "range that is now indicated . . . is appropriate in this matter," and sentenced Hankerson to the lowest end of the range, 121 months. (App. 42-43.) Considering our deferential posture here, the fact that the sentencing court chose the lowest end of an already lowered guidelines range, and the fact that a within-guidelines sentence is more likely to be reasonable than a non-guidelines sentence, *see Rita*, 2007 WL 1772146, at *6, we cannot conclude that the District Court acted outside its "broad discretion" in imposing this sentence. *Cooper*, 437 F.3d at 330 n.9. The District Court reasonably applied the sentencing factors to the facts of this case.

III.

Ineffective assistance of counsel claims are generally not considered on direct appeal, but in a collateral proceeding. *See United States v. Haywood*, 155 F.3d 674, 678 (3d Cir. 1998). Nevertheless, "[w]here the record is sufficient to allow a determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed," and the

issue can be resolved on direct appeal. *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991).

There are two components to an ineffectiveness claim. First, the defendant must show that counsel's performance was deficient, that is, that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In assessing counsel's performance, the reviewing court must be "highly deferential," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. (citation and internal quotation omitted). It is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989). If a defendant succeeds in satisfying the first component, he must then also show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In the sentencing context, prejudice exists where the deficient performance affected a defendant's sentence. *See, e.g., Glover v. United States*, 531 U.S. 198, 203-04 (2001) (holding that any increase in sentence resulting from deficient performance can constitute prejudice).

Hankerson first argues that counsel's performance was deficient for pursuing the argument that his 1997 offenses should be treated as related, despite the fact that both the plain language of the commentary to the guidelines and Third Circuit precedent[5] made clear that this argument was without merit.

---

[5]The commentary provides, in part:
Prior sentences are not considered related if they were for offenses separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences

Hankerson misconstrues counsel's argument at sentencing. After acknowledging the Third Circuit precedent on point on the relatedness issue, counsel entreated the Court nevertheless to consider the past sentences as related "in the interest of justice," particularly since Hankerson was sentenced for both offenses on the same date and the sentences were ordered to run concurrent to one another. (App. 21.) In the alternative, counsel argued for a downward departure due to the fact that the Career Offender provisions overstated this defendant's criminal history. This two-pronged strategy was certainly reasonable, as counsel effectively made the point that even if the Court were constrained to apply the Career Offender guideline in the Court's initial computation of the guidelines range, that this case was an appropriate one for a downward departure. Indeed, the Court agreed and granted a downward departure on this ground. In addition, counsel's successful oral argument in this regard defeats Hankerson's claim that counsel should have separately made a written submission on the issue of a downward departure for overstatement of criminal history.

Hankerson also faults counsel for failing to present meaningful mitigation evidence. This argument is rejected. At the sentencing hearing, counsel related to the Court a host of relevant mitigation evidence, including Hankerson's learning disability and his difficulties in school; his suffering at the murder of his mother and the recent death of his brother; his role in the lives of his four children and their need for his continued presence; and his accomplishment of learning a trade as a barber and keeping that job for five years. Hankerson argues that this evidence was not fully developed, asserting, for example, that

---

are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.3 (2003). In *United States v. Hallman*, 23 F.3d 821 (3d Cir. 1994), this Court held that if the defendant's prior offenses were separated by an intervening arrest, the sentencing court need not consider the three alternative ways of finding consolidation, contained in the "otherwise" clause. *Id.* at 825. Here, Hankerson's prior sentences qualifying him for sentencing under the Career Offender provisions were for offenses separated by an intervening arrest.

counsel should have presented more information on his conquering his substance abuse problem and learning a trade. Considering, however, that Hankerson's offense of conviction occurred *after* he had made these changes in his life, we cannot say that the balance counsel struck between describing the positive changes Hankerson had made in his life and not overemphasizing his success in reforming himself was not a reasonable strategy. Moreover, as there is no reasonable probability that the result of the proceeding would have been different if any of these factors had been further developed at sentencing, Hankerson cannot show prejudice here.

Finally, Hankerson argues that his counsel's argument remained "guidelines-centric," even though after *Booker*, the guidelines were no longer binding. First of all, contrary to Hankerson's characterization, counsel did present evidence tailored to the § 3553(a) factors, and did not argue his downward departure motions to the exclusion of argument on those factors. (*See* App. 37-40.) Secondly, given that "[t]he advisory guidelines range . . . continues to play an integral part in sentencing decisions" after *Booker*, and that a sentence within the range is more likely to be reasonable than one without, it was entirely reasonable for defense counsel to focus much of his argument on the guidelines and on his successful argument for a downward departure. *Cooper*, 437 F.3d at 331. As such, counsel's approach to sentencing was both reasonable and effective, and thus fails the *Strickland* test for ineffectiveness.

Because the record here is sufficient to evaluate the ineffectiveness claim, and because we find as a matter of law that counsel's performance was not constitutionally deficient nor did it prejudice Hankerson, the ineffectiveness claim is rejected.

## IV.

In conclusion, because we find no merit to either of Hankerson's challenges to his sentence, we will affirm.

_____

14