**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2020

_____

UNITED STATES OF AMERICA

v.

CORY MELVIN,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2-09-cr-00343-001)
District Judge: Honorable Dennis M. Cavanaugh

_____

Submitted Under Third Circuit LAR 34.1(a)
February 10, 2012

_____

Before:   SLOVITER and VANASKIE, *Circuit Judges*, and POLLAK,
                    *District Judge**

(Opinion Filed:  March 2, 2012)

_____

OPINION OF THE COURT

_____

---

    * Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

VANASKIE, *Circuit Judge.*

Cory Melvin appeals the 121-month sentence the District Court imposed after he pleaded guilty, without a plea agreement, to a seven-count indictment charging him with four counts of being a felon in possession of a firearm, one count of engaging in an illegal firearms business, and one count of conspiracy. He argues that the District Court committed procedural error because it did not adequately address his argument for a significant downward variance based on purported flaws in the development of the firearms guidelines range, U.S.S.G. § 2K2.1. He further contends that these flaws render his sentence, which is at the bottom of the guidelines range, substantively unreasonable. He also argues that the District Court's factual findings were insufficient to support application of the four-level enhancement for trafficking in firearms pursuant to U.S.S.G. § 2K2.1(b)(5). We reject these arguments and will affirm.

## I.    Background

We write primarily for the parties. Accordingly, we will relate only those facts necessary to our analysis.

In a series of transactions occurring between August 2008 and February 2009, Melvin arranged for the sale of firearms to a confidential witness working with the Government ("CW"). During this time, the CW recorded several conversations in which he and Melvin discussed the firearms available for sale, the purposes for which they would be used, and other weapons Melvin could obtain. In four separate transactions during this period, Melvin sold the CW a total of 11 firearms, including one stolen firearm, for more than $11,000 cash. On February 4, 2009, after Melvin completed a sale

2

to the CW, Melvin and his brother Rashan Clark, who also participated in the transactions, were arrested.

On May 5, 2009, a seven-count indictment was filed against Melvin, charging him with one count of possession and transfer of a machine gun (18 U.S.C. §§ 922(o)(1) and 924(a)(2)), four counts of being a felon in possession of a firearm (18 U.S.C. §§ 922(g)(1) and 924(a)(2)), one count of aiding and abetting in a firearms dealing business (18 U.S.C. §§ 2, 922(a)(1)(A), 923(a) and 924(a)(1)(D)), and one count of conspiracy (18 U.S.C. § 371). On August 19, 2009, Melvin pleaded guilty to all seven counts.

Melvin's advisory sentencing guidelines range was 121 to 151 months, based upon an adjusted offense level of 29, which included a four-level enhancement for trafficking pursuant to U.S.S.G. § 2K2.1(b)(5), and a criminal history category of IV. During the sentencing proceedings, which extended over four separate hearings, the Government sought a sentence within the guidelines range. Melvin objected to the calculation of his guidelines range and argued for a downward variance.

At his first sentencing hearing on June 29, 2010, Melvin raised several objections to the calculation of his guidelines range, and the Court resolved all except for his objection to the four-level trafficking enhancement. Melvin contended, *inter alia*, that the four-level trafficking enhancement did not apply because the Government had not carried its burden of establishing, by a preponderance of the evidence, that he "knew or had reason to believe" that the firearms would be used for illegal purposes. The Government's main basis for applying this enhancement was a tape-recorded conversation during which the CW purportedly informed Melvin that he was planning to

3

resell the firearms to individuals who would use them in gang warfare. Defense counsel, who was apparently hard of hearing, objected that the tapes were inaudible or incomprehensible to him, and so disputed that the CW made such statements to Melvin. The Court adjourned to give defense counsel another opportunity to listen to the tapes before resolving the issue.

Following this hearing, the Government submitted a supplemental sentencing letter that included a draft transcript of certain relevant portions of the recordings. When the hearing was resumed on August 3, 2010, defense counsel requested permission to withdraw from the case and for the appointment of new counsel who would be better-able to hear the tapes. Judge Cavanaugh, who had listened to the tapes, commented that he did not have the same difficulty in hearing the conversation, but appointed new counsel for the purpose of dealing with this outstanding guidelines issue.

Prior to the next sentencing hearing, Melvin's new counsel submitted a lengthy memorandum arguing for a significant variance below the guidelines range based on the sentencing factors in 18 U.S.C § 3553(a).[1] First, Melvin argued that his personal characteristics and the circumstances of his offense warrant a downward variance. Second, he urged the Court to disregard the guidelines range, arguing that flaws in the development of the guidelines render them a "poor guide to the minimally sufficient sentence" (A. 132), and that the seriousness of the offense, the purposes of sentencing,

---

[1] Melvin elaborated these arguments in a lengthy, 37-page memorandum. He also submitted 10 exhibits—a total of 187 pages—addressing the history and development of the firearms guidelines range and the disproportionate impact of these ranges on African Americans and Hispanics.

4

and the need to avoid unwarranted disparities militate in favor of a below-guidelines sentence.

In support of these arguments, Melvin provided a detailed analysis of the history and development of the guidelines to demonstrate that they had become increasingly severe as a result of amendments which, in his view, were based on "seriously flawed" reasoning. In particular, he argued that the amendments made after 1991 "were passed with the most nominal of explanations, and, in one instance, in direct contravention of the studied conclusion of the [Sentencing Commission's] 1990 review" of the guidelines. (A. 131.) He concluded that the current guidelines therefore "do[] *not* reflect an exercise of the Commission's unique role and expertise," and urged the District Court to impose a sentence between 84 to 105 months—the range that would have applied to Melvin under the guidelines as they existed in 1991, prior to the purportedly unfounded amendments. (A. 132.)

The Government submitted a memorandum responding to what it referred to as Melvin's "deconstruction argument" against the guidelines. [2] (A. 310-27.) The Government maintained that none of the § 3553(a) sentencing factors militate in favor of a downward variance, and that a sentence within the guidelines range is appropriate. With respect to Melvin's deconstruction argument, the Government argued that although district courts "may vary based on a policy disagreement with a Guideline," they are not

---

[2] The Government and District Court refer to Melvin's arguments about the flaws in the firearms guideline as "deconstruction arguments" because they "call for a reconstruction of how and why the Commission developed" the guidelines. (Appellee Br. at 12.) Since this is an accurate description of Melvin's arguments, we use this term as well.

required to do so when they in fact agree with the particular guideline. (A. 320.) Furthermore, the Government argued that "requiring sentencing courts to investigate the formulation of a given Guideline could easily overwhelm the institutional resources of the district court." (A. 320.)

The sentencing hearing was reconvened on April 4, 2011, and when it became apparent that Melvin's new defense counsel was unprepared to address the applicability of the trafficking enhancement, the Court adjourned to allow counsel an opportunity to prepare. Later that day, after listening to the tapes and reviewing the transcripts submitted by the government, defense counsel submitted a letter to the Court agreeing that the transcripts were accurate, but maintaining "that the content of those conversations does not establish by a preponderance of the evidence the requisite knowledge or intent on Mr. Melvin's part." (A. 345.)

The District Court reconvened the sentencing hearing for the final time on April 5, 2011. With respect to the four-level trafficking enhancement, Melvin argued that the recorded conversation in which the CW referred to gang warfare was "driven by the confidential informant," and did not establish Melvin's knowledge "that [the guns] were going to gangs." (A. 349-50.) Melvin disputed the Government's interpretation of the conversation, arguing that it was not clear from the language that the CW was going to resell the guns for use in gang warfare. The Government maintained that the recorded conversations were sufficient to establish that Melvin "knew or should have known that these guns were going to an illegal purpose, namely, being resold for use in gang warfare." (A. 353.)

6

After hearing both parties' arguments on this matter, the Court rejected Melvin's arguments and held that the four-level trafficking enhancement does apply. It found that the recorded conversation, along with the other facts of the case, "demonstrate by a preponderance of the evidence that [Melvin] had reason to believe that he was transferring firearms to an individual who intended to use or dispose of them unlawfully, including arming gang warfare." (A. 355.) Judge Cavanaugh explained: "I don't know how any reasonable person could listen to this and come to any other conclusion." (Id.)

The Court then gave both parties an opportunity to address the § 3553(a) sentencing factors. Melvin reiterated the arguments in his memorandum, urging the Court that a downward variance was justified in light of both his personal characteristics and the purported flaws in the development of the guidelines. Based on these arguments, and a brief discussion of the remaining sentencing factors, Melvin requested a significant downward variance to a sentence of 84 months. The Government disagreed with Melvin's arguments, summarizing the arguments it laid out in its memorandum, and requesting a sentence within the guidelines range.

The Court then addressed each of the § 3553(a) sentencing factors with respect to Melvin's case and the parties' arguments. The Court discussed the seriousness of the offense, Melvin's history and characteristics, and the interests of "promot[ing] respect for the law and provid[ing] just punishment," and explicitly rejected Melvin's deconstruction argument that the Guidelines are flawed. (A. 376-82.) Based on this analysis, it declined Melvin's request for a variance and imposed a sentence at the bottom of the guidelines range: 121 months' imprisonment, followed by three years of supervised release.

7

## II. Jurisdiction and Standard of Review

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Prior to 2005, the federal Sentencing Guidelines ("Guidelines") were "binding on district courts," which could only impose sentences departing from these ranges in limited circumstances. *United States v. Merced*, 603 F.3d 203, 213 (3d Cir. 2010). However, in *United States v. Booker*, 543 U.S. 220, 245-46 (2005), the Supreme Court held that the Guidelines are advisory rather than mandatory. Following *Booker*, district courts in the Third Circuit conduct a three-step analysis to determine the appropriate sentence for a defendant:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Lofink*, 564 F.3d 232, 237-38 (3d Cir. 2009) (footnote omitted) (quoting *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)). Under step three of this analysis, sentencing courts "must 'consider the Guidelines range' pursuant to § 3553(a)(4)," but have discretion to "'tailor the sentence in light of other statutory concerns' reflected in the sentencing factors of § 3553(a)." *Merced*, 603 F.3d at 213 (quoting *Booker*, 543 U.S. at 245); *see also*, 18 U.S.C. § 3553(a).

8

"[B]oth the district court's crafting of an appropriate sentence and the appellate court's review of that sentence for reasonableness must be 'guided by the factors set forth in []§ 3553(a)." *United States v. Ausburn*, 502 F.3d 313, 327-28 (3d Cir. 2007) (quoting *United States v. Cooper*, 437 F.3d 324, 327 (3d Cir. 2006)). When reviewing the reasonableness of a sentence on appeal, we conduct a two-step analysis, and apply the abuse of discretion standard at each step. *Merced*, 603 F.3d at 214.

First, we consider whether the district court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in [] § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc). If we find that the court committed procedural error, "our preferred course is to remand the case for re-sentencing, without going any further." *Merced*, 603 F.3d at 214.

If we do not find procedural error, we proceed to the second step of examining the substantive reasonableness of the sentence. *Merced*, 603 F.3d at 214. We consider whether the district court "applied those factors reasonably by selecting a sentence grounded on reasons that 'are logical and consistent with the [§ 3553(a)] factors.'" *Ausburn*, 502 F.3d at 328 (quoting *Cooper*, 437 F.3d at 330). In conducting this analysis, "we apply a deferential standard, 'the trial court being in the best position to determine

9

the appropriate sentence in light of the particular circumstances of the case.'" *United States v. Hankerson*, 496 F.3d 303, 308 (3d Cir. 2007) (quoting *Cooper*, 437 F.3d at 330). "In other words, if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

III.     Procedural Reasonableness

A. Calculation of Melvin's Advisory Range

Melvin argues that the District Court erred in calculating his advisory range by applying the four-point trafficking enhancement when, according to Melvin, there were insufficient factual findings to support this enhancement. To warrant application of the trafficking enhancement, the Government must demonstrate by a preponderance of the evidence that Melvin "knew or had reason to believe" that he was transferring firearms "to an individual whose possession or receipt of the firearm would be unlawful; or who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1 cmt. n. 13.

The central dispute in this regard was whether the tape-recorded conversations provided sufficient evidence that Melvin "knew or had reason to know" that the firearms he sold to the CW were to be used for illegal purposes. The District Court concluded that the conversations on the tapes, along with other circumstantial evidence—including that Melvin was being paid a black market rate, the type and number of firearms he was selling, and the secretive nature of the transactions—were adequate evidence that he knew or should have known that the firearms would be used in gang warfare.

10

This Court reviews a district court's factual findings in connection with a Guidelines enhancement for clear error. *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2005). Melvin presents no compelling arguments that the Court clearly erred in finding that there were sufficient facts to establish the knowledge element required to apply the trafficking enhancement. Melvin advances only a conclusory argument that the findings "were insufficiently specific to support this requirement." (Appellant Br. at 60.) We disagree. The District Court provided sufficiently specific findings amply supported by the evidence to warrant application of the trafficking enhancement.

B. Adequacy of Statement of Reasons for Denying the Requested Variance

Melvin contends that the record does not disclose that the District Court gave meaningful consideration to his § 3553(a) arguments for a variance based on purported flaws in the development of the firearms guidelines. While there is "no mandatory script for sentencing," *United States v. Goff*, 501 F.3d 250, 256 (3d Cir. 2007), the court's analysis must be sufficient to demonstrate "the exercise of independent judgment, based on a weighing of the relevant factors, in arriving at a final sentence." *Grier*, 475 F.3d at 571-72. Sentencing courts need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear [they] took the factors into account in sentencing." *Cooper*, 437 F.3d at 329 (citations omitted). However, "the court must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *Ausburn*, 502 F.3d at 329.

During its discussion of the § 3553(a) factors with respect to Melvin's case, the District Court addressed the nature and circumstances of the offense, Melvin's history,

11

characteristics and prior record, and the interests in promoting respect for the law, protecting the public, and providing adequate deterrence. The record reflects that the Court did evaluate both Melvin's and the Government's arguments. Moreover, the Court explicitly addressed Melvin's deconstruction argument, stating:

> I also decline to engage or agree with the deconstruction argument put forth by the Defendant. I reject the Defendant's position that the Guidelines are incorrect or should not be considered. I believe that I should consider the Guidelines along with all those other factors that I've mentioned, and I have and am considering them pursuant to 3553(a).

(A. 381-82.)

Melvin argues that the Court's statement that it "decline[d] to engage" his deconstruction arguments indicates that it "adopted the government's position that it was not required to engage in such arguments." (Appellant Br. at 41.) Melvin argues at length that this position—which is, in his words, "that sentencing courts could essentially ignore challenges such as the one Mr. Melvin made to the firearms Guideline"—is wrong, and that the Court therefore committed procedural error by adopting it. (Appellant Br. at 42.) However, Melvin wrongly assumes that the District Court's asserted refusal to "engage" with his arguments is synonymous with "ignoring" them, and necessarily reflects a lack of meaningful consideration of them. We find it unnecessary to reach the question of whether sentencing courts can "essentially ignore" deconstruction challenges under *United States v. Lopez-Reyes*, 589 F.3d 667 (3d Cir. 2009), because we find that the District Court did adequately consider Melvin's arguments.

12

The District Court's statement did explicitly "acknowledge and respond to" Melvin's deconstruction arguments when it stated that it "decline[d] to engage *or agree* with the deconstruction argument," and further explained that it "reject[ed] [Melvin's] position that the Guidelines are incorrect or should not be considered." (A. 381-82) (emphasis added). These statements demonstrate that the Court considered Melvin's arguments about the purported flaws in the firearms guidelines and disagreed with Melvin's conclusion that the guidelines are incorrect. As we stated in *Lopez-Reyes*, "*Kimbrough [v. United States*, 552 U.S. 85 (2007)] does not require a district court to reject a particular Guidelines range where that court does not, in fact, have disagreement with the Guideline at issue." 589 F.3d 667, 671 (3d Cir. 2009). Moreover, the District Court's statement that it "believe[d] that [it] should consider the Guidelines along with all those other [sentencing] factors that [it] mentioned" reflects both the Court's recognition of its discretion to vary from the guidelines range, and its judgment that the firearms guidelines were appropriate. (A. 381.)

We conclude that the Court's statements demonstrate adequate consideration of Melvin's arguments. As we have observed, District Courts are "not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline." *Lopez-Reyes*, 589 F.3d at 671; *see also United States v. Aguilar-Huerta*, 576 F.3d 365, 368 (7th Cir. 2009), *quoted in Lopez-Reyes*, 589 F.3d at 671 (stating that a sentencing judge "should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline."). Accordingly, we find that the Court did meaningfully

13

consider and—to the extent that it was even required to do so under *Lopez-Reyes*—adequately explain its rejection of Melvin's deconstruction arguments, and therefore did not commit procedural error.

## IV. Substantive Reasonableness

Melvin argues that his 121-month sentence is substantively unreasonable, for substantially the same reasons that he challenged the guidelines range before the District Court: "[B]ecause the advisory range produced by U.S.S.G. § 2K2.1 is far greater than necessary to meet the purposes of sentencing in light of Mr. Melvin's particular circumstances." (Appellant Br. at 56.) The District Court's disagreement with Melvin's policy views and refusal to reject the guidelines range does not amount to substantive unreasonableness. Melvin has not shown that the District Court abused its discretion in imposing a prison term at the bottom of the applicable guidelines range. We therefore conclude that Melvin's sentence was not substantively unreasonable.

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.