NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1181
_____

UNITED STATES OF AMERICA

v.

DONALD A. SCOTT, a/k/a DC

Donald A. Scott,
                            Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 09-cr-00072-001)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2012

Before:  SCIRICA, FISHER, and JORDAN, *Circuit Judges*.

(Filed: November 15, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

        Donald Scott was convicted of multiple counts of conspiracy, Hobbs Act Robbery,

carjacking, and possession of a firearm in furtherance of a crime of violence, in

connection with a series of armed robberies.  The United States District Court for the

Middle District of Pennsylvania sentenced Scott to 1,276 months' imprisonment and five years of supervised release. Scott appeals that sentence, arguing that the District Court erred when it found that one of the robbery victims had suffered a "permanent or life-threatening injury" and hence that a six-level enhancement pursuant to § 2B3.1(b)(3)(C) of the United States Sentencing Guidelines was inappropriate. Scott also contends that he received ineffective assistance of counsel in connection with his unsuccessful motion to suppress evidence. For the reasons that follow, we will affirm the judgment of the District Court.

## I.     Background

From January to April 2008, Scott and his co-conspirators planned and carried out a series of robberies of drug traffickers in central Pennsylvania. Scott and his co-conspirators would identify a target, threaten him or her with violence, and take drugs, money, and valuables. Victims were variously held at gunpoint, bound, pistol-whipped, and beaten. If victims did not have drugs or money in their possession, they were forced to drive to other locations where contraband and cash could be found.

During one such robbery, one of the victims, Michael Pearson, was beaten, bound, and stabbed in the neck with a screwdriver.[1] Pearson remained conscious long enough to loose himself and his wife, but then passed out. According to Pearson's wife, who was sexually assaulted in the attack, he was lying in a pool of blood from the stab wound. Pearson had to be air-lifted to a medical center for emergency treatment.

---

[1] It is not clear from the record whether Scott or one of his co-conspirators stabbed Pearson.

In May 2008, a confidential informant and former co-conspirator of Scott's told Police Detective Jeffrey Kurtz about an apartment where Scott was storing stolen property from the robberies. The apartment belonged to Samantha Jackson, a friend of Scott's. Kurtz swore out an affidavit of probable cause that listed a number of items believed to be in the apartment, and, on the basis of the affidavit, he applied for and received a warrant to search the apartment. Police officers then searched Jackson's apartment and recovered stolen property, as well as a computer that belonged to Scott.

On February 25, 2009, a federal grand jury issued a 15-count indictment charging Scott and others with a variety of offenses. Scott filed a timely motion to suppress the evidence found at Jackson's apartment. He argued that the affidavit of probable cause contained a material misstatement of fact, that the officers seized materials beyond those listed in the warrant, and that, though not authorized by the warrant, the officers had conducted searches of electronic material stored on his computer. The District Court held a suppression hearing and denied the motion, except as to the material found on the computer.

Scott was tried by a jury and convicted on one count of conspiracy, 18 U.S.C. § 371, four counts of Hobbs Act robbery, 18 U.S.C. § 1951, two counts of carjacking, 18 U.S.C. § 2119, and four counts of possession of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c). A presentence investigation report ("PSR") demonstrated that, because of the multiple § 924(c) convictions, Scott was required to serve 984 months' imprisonment consecutive to any other term of imprisonment he might receive. (PSR ¶ 83.) The PSR also stated that a six-level enhancement was applicable because

3

one of his victims, Pearson, had suffered a life-threatening injury. (PSR ¶ 62.) The District Court, observing that Scott's age and extensive history of violence rendered him "an incorrigible convicted felon who, if released … will immediately prey upon the community" (App. at 179), sentenced him to 1,276 months' imprisonment, $58,105 in restitution, and five years' supervised release.

## II.     Discussion[2]

### A.     *Standard of Review*

We exercise plenary review of the District Court's interpretation of the Guidelines. *United States v. Kennedy*, 554 F.3d 415, 418 (3d Cir. 2009). We review factual findings that support a sentencing enhancement for clear error. *Id.*

We typically do not consider on direct appeal any claim of ineffective assistance of counsel but, instead, take such claims up on collateral review. *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007). However, "[w]here the record is sufficient to allow a determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed, and the issue can be resolved on direct appeal." *Id.* (citing *United States v. Headley*, 923 F.2d 1029, 1083 (3d Cir. 1991)) (internal quotation marks omitted). If there is a sufficient basis for review, we review the district court's findings of fact for clear error and make an independent judgment as to whether the facts establish constitutionally ineffective assistance of counsel. *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430-31 (3d Cir. 1996).

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

B.     *The Sentencing Enhancement*

Scott argues that the District Court erred when it imposed a six-level sentencing enhancement, because Pearson's injuries did not rise to the level of "permanent or life-threatening" as defined in § 1B1.1 of the Guidelines, so that the enhancement under § 2B3.1(b)(3)(C) is inapplicable. Scott argues that Pearson's injury was, at most, a "serious bodily injury" as defined in the Guidelines.

The Guidelines define "[p]ermanent or life-threatening bodily injury," in relevant part, as "injury involving a substantial risk of death … ." U.S.S.G. § 1B1.1 cmt. n.1(J). By contrast, the Guidelines define "[s]erious bodily injury" as "injury involving extreme physical pain … or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* cmt. n.1(L). A stab wound may be seen as involving a substantial risk of death when it is traumatic enough to require emergency surgery. *See United States v. Jacobs*, 167 F.3d 792, 797-98 (3d Cir. 1999) (finding that stab wound necessitating emergency surgery to remove intestinal obstruction was life-threatening). By contrast, injuries that are "serious" but not typically "life-threatening" include fractured bones, *United States v. Reese*, 2 F.3d 870, 897 (9th Cir. 1993), unconsciousness as a result of a blow, *United States v. Thompson*, 60 F.3d 514, 518 (8th Cir. 1995), and injuries that may be treated with outpatient procedures, *United States v. Woodlee*, 136 F.3d 1399, 1408-09 (10th Cir. 1998).

The record here clearly demonstrates that Pearson's injury went beyond serious and was life-threatening. Pearson's wife testified that, after her husband lost consciousness, he was surrounded by a pool of his own blood. He was airlifted to the

5

nearest hospital and, once there, required immediate surgery to save his life. He had to be in intensive care for some time after the surgery. The District Court properly concluded that, "[i]f it wasn't for that medical intervention it is quite likely that Mr. Pearson would have died." (App. at 159-60). Given these facts, we see no error in the District Court's imposition, under Guidelines § 2B3.1(b)(3)(C), of the six-level enhancement for the infliction of a life-threatening injury.[3]

### C. *Ineffective Assistance of Counsel*

Scott claims ineffective assistance of counsel based on the failure of his lawyer to present evidence at the suppression hearing. Specifically, Scott argues that counsel could have, and should have, presented evidence that Scott had a reasonable expectation of privacy in Jackson's apartment. The District Court held that Scott had no such reasonable expectation and therefore lacked standing under the Fourth Amendment to challenge the search and seizure.[4]

---

[3] The District Court recognized that "not all of [Pearson's] injuries were directly attributable to [ ] Scott's hand … ." (App. at 160.) However, "the Sentencing Guidelines permit a defendant's sentence to be enhanced based not only upon his own conduct[ ] but also upon the conduct of his criminal confederates." *United States v. Cespedes*, 663 F.3d 685, 689 (3d Cir. 2011); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.3(a) (providing that sentence adjustment may be based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction … ."). The District Court properly found that the injury to Pearson was reasonably foreseeable by Scott due to the overall brutality of the robberies.

[4] The District Court also held, however, that Scott had a reasonable expectation of privacy with respect to his computer, taken from Jackson's apartment, and thus the contents of the computer were ordered suppressed.

To secure a new trial based on an ineffective assistance claim, a defendant must show that counsel's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

We note again that "it has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack," *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003), because "the evidence introduced at trial … will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis," *id.* at 272 (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)) (internal quotation marks omitted). However, in this case, "the record is sufficient to allow a determination of ineffective assistance of counsel," *Hankerson*, 496 F.3d at 310 (citation and internal quotation marks omitted), because it plainly demonstrates that Scott was not prejudiced by the actions of his lawyer.

Scott had two substantive bases for his motion to suppress.[5] First, he argued in the District Court that the warrant was defective because the affidavit of probable cause misstated the date of an interview with a confidential informant by one day, placing that interview on the date of the actual search. To successfully challenge a warrant based on

---

[5] We say "had" because Scott does not challenge the substantive basis of the District Court's denial of his motion to suppress in this appeal. Scott claims ineffective assistance only in his counsel's failure to present evidence with respect to Scott's standing to challenge the search based on his relationship with Jackson.

misstatements made in an affidavit, a defendant must prove both that the affiant made the statements "knowingly or with reckless disregard for the truth" and that the statements were "material to the finding of probable clause." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). In this case, there is no evidence that the incorrectly recorded date was anything more than a typographical error. Moreover, the actual date of the interview was immaterial because the finding of probable cause was not based on any particular date but rather depended on the informant's statement that he had been in Jackson's apartment and had observed firearms and stolen property ten days prior to the interview. Therefore, Scott cannot successfully challenge the warrant on the basis of the incorrect date.

Second, Scott challenged the seizure of certain items not listed in the search warrant. The seized evidence that was not mentioned in the warrant was, however, catalogued in the affidavit of probable cause, which was itself attached to the warrant. Moreover, the police officers conducting the search had descriptions of the stolen merchandise that matched the items they seized, so that the seizure was justified under the plain view exception. *See United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (holding that the plain view exception applies where "the incriminating character of the evidence [is] immediately apparent" to the searching officers) (citation and internal quotation marks omitted). Therefore, Scott cannot successfully challenge the seizure

based on the seemingly inadvertent omission from the warrant of some of the items actually seized.[6]

Because Scott's search and seizure challenges were without merit, he cannot prove that he was prejudiced, as required under the second prong of *Strickland*, by the failure of his counsel to establish that he had standing to bring those challenges.[7] We therefore reject his ineffective assistance of counsel claim.[8]

## III.  Conclusion

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[6] Notwithstanding its finding that Scott lacked standing to challenge the search and seizure, the District Court considered both of Scott's arguments, and found them lacking for the reasons set forth above.

[7] The record is, admittedly, insufficient to determine whether Scott's lawyer's representation was objectively unreasonable, but failure to satisfy either *Strickland* prong is fatal to a claim of ineffective assistance of counsel. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002).

[8] It is not clear from Scott's brief whether he appeals the District Court's denial of his motion to suppress, which underlies his claim of ineffective assistance of counsel. However, for the reasons set forth in this opinion, the District Court's denial of that motion was entirely justified.