NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1570
_____

UNITED STATES OF AMERICA

v.

JOHN D. WOSOTOWSKY,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-11-cr-00203-001)
District Judge: Honorable Maurice B. Cohill, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2012

Before:   HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Filed: June 4, 2013)

_____

OPINION
_____

VANASKIE, *Circuit Judge.*

John D. Wosotowsky appeals a judgment of the District Court sentencing him to

ninety-seven months' imprisonment.  Specifically, Wosotowsky challenges the District

Court's application of a four-level sentencing enhancement for "a violation of securities law" pursuant to U.S.S.G. § 2B1.1(b)(18)(A). Finding no error, we will affirm the District Court's sentence and judgment.

I.

Wosotowsky worked as a broker and a financial planner for more than twenty-six years. He held professional licenses authorizing him "to sell any and all securities, annuities (fixed & variable), and insurance." (Appendix ("A.") 74-75.) He was also a compulsive gambler and an alcoholic. To satisfy the demands of his addictions, Wosotowsky employed an elaborate investment scheme to defraud his clients out of more than two million dollars.

The scheme spanned nearly ten years, from September 2000 until May 2010. During that time, Wosotowsky was associated with the investment company MetLife, Inc. ("MetLife"). Wosotowsky also formed a fictitious company, Equity I & R, and then misrepresented to his victims that Equity I & R was a "clearing house or a transfer company" that provided secure financial investment products with high rates of return "under the umbrella of MetLife." (A. 16-17.) Wosotowsky's victims – many of whom were elderly, financially unsophisticated, and vulnerable – paid money to Equity I & R, believing it was a safe investment; instead, payments to Equity I & R went into a bank account under that name, which was controlled entirely by Wosotowsky.

In addition, Wosotowsky changed the addresses of his victims' MetLife files to mailing addresses which he maintained. He then forged some victims' names to make withdrawals and loan requests from legitimate accounts, and he had those payments sent

to the mailing addresses he controlled. He also forged those victims' signatures and deposited the funds into the Equity I & R bank account. To maintain the appearance of legitimacy, Wosotowsky prepared and mailed fraudulent quarterly and monthly financial statements detailing the investments, including the balances of principal and interest, and the rates of return.

In 2010, one of Wosotowsky's victims attempted to withdraw money from a product he believed he had purchased, only to learn that he had no such account. This discovery sparked the investigation that ultimately led to Wosotowsky's arrest.

On October 11, 2011, Wosotowsky entered a plea of guilty to one count of mail fraud and one count of making a false declaration to the Internal Revenue Service. The United States Probation Office prepared a presentence report that recommended a four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(18)(A), for offense conduct by a broker involving a violation of securities law. Wosotowsky filed an objection to the enhancement, the government filed a response, and on February 14, 2012, the District Court held a sentencing hearing which included oral argument from both parties addressing the enhancement's applicability to Wosotowsky's conduct.

After hearing argument, the District Court concluded the enhancement applied, and calculated Wosotowsky's sentence accordingly. Based on an adjusted offense level of 30 and criminal history category I, the U.S. Sentencing Guidelines (the "Guidelines") range was 97 to 121 months' imprisonment. Without the enhancement, the Guidelines range would have been 63 to 78 months. The District Court sentenced Wosotowsky to 97 months' imprisonment. Wosotowsky now appeals, contending the District Court failed

to state a proper basis for the enhancement because it did not identify either a specific "violation of securities law," as that term is defined in the Guidelines, or the conduct that supported the enhancement. Further, Wosotowsky argues that application of the enhancement is factually unsupported in the record.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review "factual findings relevant to the Guidelines for clear error and . . . exercise plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

A.

We turn first to Wosotowsky's argument that the District Court committed procedural error because it failed to properly explain the basis for the enhancement. At sentencing, a district court must meet certain procedural requirements, including the requirement that the court "adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 50 (2007). As our case law has made clear, this requirement must be flexible to accommodate the "fact-bound nature of each sentencing decision," and, thus, "there is no 'uniform threshold' for determining whether a court has supplied a sufficient explanation for its sentence." *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (citing *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)); *see also United States v. Ausburn*, 502 F.3d 313, 328 (3d Cir. 2007) ("[W]hile the record must be

4

adequate for review, it need not be perfect."). We simply require that there be a sufficient record to allow meaningful appellate review. *Ausburn*, 502 F.3d at 328.

Here, the District Court found that Wosotowsky's conduct warranted a four-level sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(18)(A)(ii), which is applicable if an offense involved "a violation of securities law and, at the time of the offense, the defendant was . . . a registered broker or dealer . . . ." *Id.* After hearing oral argument on the issue of the enhancement, the District Court stated: "As far as I'm concerned, what we have here is a broker and he was dealing with securities, and the manner in which he did it was a violation of securities law. So I make a finding that the enhancement does apply in this case." (A. 214.)

Focusing on this statement alone, Wosotowsky urges us to remand this case because the District Court failed to state the specific securities law Wosotowsky violated or the conduct that supports that violation. Wosotowsky's repeated assertion that no specific securities violation was ever identified is belied by the record. In both its written submissions and at the sentencing hearing, the Government made a detailed argument that the conduct Wosotowsky pled guilty to violated 17 C.F.R. § 240.10b-5. A review of the sentencing hearing transcript reveals that the District Court was persuaded by the Government's arguments, and, therefore, found that the enhancement was justified in this case. We are satisfied that the sentencing hearing and the parties' briefs provide a sufficient record for our review and an ample basis for the District Court's conclusion that Wosotowsky was a broker who violated securities law. Therefore, we will not

5

overturn the District Court's sentence for failing to provide an adequate record for our review.

B.

We will now address the question of whether application of the enhancement is factually supported in the record. Wosotowsky does not dispute the District Court's finding that he is a broker. Thus, the only question is whether Wosotowsky's scheme violated securities law as defined by the Guidelines. Application note 14 to § 2B1.1 defines "securities law" as follows:

> Securities law (i) means 18 U.S.C. §§ 1348, 1350, and the provisions of law referred to in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)); and (ii) includes the rules, regulations, and orders issued by the Securities and Exchange Commission pursuant to the provisions of law referred to in such section.

U.S.S.G. § 2B1.1 cmt. n.14 (internal quotation marks omitted). One of the provisions of law referenced in 15 U.S.C. § 78c(a)(47) is the Securities Exchange Act of 1934 (15 U.S.C. § 78a). Thus, "securities law" as defined by the Guidelines includes all of the provisions and regulations issued pursuant to the Securities Exchange Act of 1934.

The Government argues Wosotowsky's conduct violated 17 C.F.R. § 240.10b-5, a regulation enacted pursuant to 15 U.S.C. § 78j and commonly referred to as Rule 10b-5. This regulation "makes it unlawful for any person, in connection with the purchase or sale of [a] security, to (1) employ a device, scheme or artifice to defraud; (2) make any false statement of material fact; or, (3) engage in any act, practice or course of business

6

that operates as fraud or deceit upon any person."[1] *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998).

It is undisputed that Wosotowsky employed a scheme to defraud, that in doing so he made material false statements, and, further, that he engaged in acts and practices which defrauded and deceived his victims. Thus, his conduct violated Rule 10b-5 so long as his scheme involved "the purchase or sale of any security." 17 C.F.R. § 240.10b-5. In support of the contention that Wosotowsky's sham products were securities, the Government points to Congress' definition of a "security," which includes any "investment contract." 15 U.S.C. § 78c(a)(10). The Supreme Court has defined "investment contract" as follows:

> [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person

---

[1] 17 C.F.R. § 240.10b-5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

invests his money in a common enterprise and is led to expect
profits solely from the efforts of the promoter or a third party,
it being immaterial whether the shares in the enterprise are
evidenced by formal certificates or by nominal interests in the
physical assets employed in the enterprise.

*SEC v. Howey*, 328 U.S. 293, 298-99 (1946). We agree with the Government and the

District Court that Wosotowsky's scheme fits within this definition of investment

contract and, thus, violates Rule 10b-5.

Wosotowsky concedes that his fraudulent products fit within this broad definition

of securities. He contends, however, that the products he purported to sell are excluded

from federal securities law by 15 U.S.C. § 77c(a)(8), which exempts from federal

securities law "[a]ny insurance or endowment policy or annuity contract or optional

annuity contract, issued by a corporation subject to the supervision of the insurance

commissioner, bank commissioner, or any agency or officer performing like functions, of

any State or Territory of the United States or the District of Columbia."

Wosotowsky's argument is unavailing for two reasons. First, the products

Wosotowsky purported to sell were variable – not fixed – annuities, which fall within the

scope of Rule 10b-5 notwithstanding the exemption set forth in § 77c(a)(8). *See SEC v.*

*Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 69-73 (1959). Second, the exemption

is inapplicable here because it only excludes annuities issued by a qualifying

corporation.[2] On this second point, we are unconvinced by Wosotowsky's assertion that

---

[2] Wosotowsky contends this argument is waived because the Government did not
argue it before the District Court. We are not limited to the bases relied upon by the
District Court, however, and we may affirm a ruling of the District Court "for any proper

8

the record is unclear as to who – Wosotowsky, Equity I & R, or MetLife – actually issued the annuities. Instead, we find the record entirely clear on this point: no party issued any legitimate annuities. Wosotowsky purported to sell a variety of annuities, but this was a sham. Thus, no qualifying corporation ever issued annuities that could bring the products within § 77c(a)(8)'s exemption.

Moreover, in addition to annuities, the record contains evidence that Wosotowsky also contracted to sell traditional securities in the form of money market and mutual funds. (A. 129-30.) Finally, the Government's uncontested proffer at the sentencing hearing established that Wosotowsky convinced some of his victims to sell legitimate securities in exchange for his false products. This conduct also falls within the scope of Rule 10b-5, which applies to fraud in connection with "the purchase *or sale* of any security." 17 C.F.R. § 240.10b-5 (emphasis added). Accordingly, we conclude that Wosotowsky's scheme violated securities law as defined by the Sentencing Guidelines and, consequently, that the District Court did not err by applying the four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(18)(A).

## III.

For the foregoing reasons, we will affirm the District Court's sentence and judgment.

---

reason that appears on the record even where not relied on by it." *United States v. Perez*, 280 F.3d 318, 337 (3d Cir. 2002).